**CRIMMINS v. WOODSON et al.**

No. 5959.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 14, 1949.

Decided Nov. 7, 1949.

determine the rights of these defendants in certain oil and gas leaseholds and their equipment, located in the Counties of Calhoun, Ritchie and Roane, in the State of West Virginia. Crimmins asserted in his answer that he was the owner and holder of a chattel mortgage on the leaseholds and equipment of properties known as Syndicate No. 1, located in Calhoun and Ritchie Counties, and that he was the owner of an undivided one-half interest in a leasehold of a 200 acre tract known as the Miller property, located in Ritchie County.

A Special Master was appointed by the District Court, many hearings were held and voluminous testimony was taken. Crimmins filed objections to the report of the Special Master which, with its findings of fact and conclusions of law, was adverse to the claims of Crimmins. This report was confirmed by the District Court. From the judgment of the Court below, sitting without a jury, entered in pursuance of the Special Master's report, Crimmins has appealed.

Crimmins bases his claims to the leaseholds, properties and equipment, comprising Syndicate No. 1, upon a chattel mortgage executed by M. C. Rodgers and G. K. Rodgers, dated May 17, 1939, and recorded August 25, 1939. Under this chattel mortgage, Crimmins claims priority in these properties over various assignments of fractional interests in the same properties made by the two Rodgers to sundry assignees, recorded not earlier than February, 1940.

We quote from the Special Master's Report:

"Regarding the lien for $7,750.00, with interest from December 1, 1939, on the leases in Syndicate No. 1, the following facts appear: Crimmins says that when he endorsed the note for the Rodgers on May 17, 1939, which enabled them to borrow the $8,000.00, that he did not know the Rodgers had been selling interests in the syndicate comprised of these leases. Crimmins thus claims that in taking the collateral assignment, he was an innocent purchaser for value in good faith without notice, and that since the interests which had at that time been sold were not on record that he has a prior claim to said property. Your

Denis D. Clarke, Syracuse, N. Y. (John D. Crimmins, pro se, on brief), for appellant.

Harry V. Campbell, Charleston, W. Va. (Richard W. Ahlers and Maurice Chaitkin, Pittsburgh, Pa., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

William T. Woodson instituted a civil action in the United States District Court for the Southern District of West Virginia against a number of defendants, of which the appellant Crimmins was one, to

Special Master is of the opinion, however, and so finds that Crimmins did know that practically all of the leaseholders had been disposed of by the Rodgers by the sale of interests therein and that being on notice, Crimmins' claim is invalid as against the interest holders."

This finding, confirmed by the Court, is binding upon us unless we can say that the finding is clearly erroneous. After a careful study of the record, we cannot say that this finding is clearly erroneous, so it must be upheld. See Federal Rules of Civil Procedure, rules 52, 53, 28 U.S.C.A.; National Labor Relations Board v. Standard Trouser Co., 4 Cir., 162 F.2d 1012, 1014; United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416; Stewart v. Wall, 4 Cir., 87 F.2d 598.

■ The evidence, which we briefly review, on which the Special Master based his finding of notice to Crimmins is not direct but altogether circumstantial. There were a number of quite unusual circumstances surrounding the $8,000.00 loan to the Rodgers, which the chattel mortgage secured. This mortgage was not recorded until more than three months after its execution, and, as the Special Master pointed out, Crimmins recorded this mortgage only a very short time before the Rodgers executed a large number of assignments made to investors by the Rodgers to cover prior contracts for the sale of interests in the properties included in Syndicate No. 1. It seems that, at the time of the execution of the Crimmins mortgage, the Rodgers had sold to investors more than 90 percent of their interests in Syndicate No. 1. These sales were given rather wide publicity and were made to many investors in several states.

The association of Crimmins with the Rodgers began in either late 1933 or early 1934. From this time until the execution of the chattel mortgage, there was evidence to show (as the Special Master found) that this association was quite close and that Crimmins made numerous loans to the Rodgers and helped them to secure loans from other people. Twenty-nine check stubs, which we think were admissible in evidence, were introduced showing payments by the Rodgers to Crimmins. Ten of these check stubs bore dates subsequent to the date of the loan secured by the chattel mortgage in question. No claim whatever seems to have been made by Crimmins against the properties in Syndicate No. 1 until he filed his answer in the instant action.

There was, too, evidence of meetings between Crimmins and the Rodgers in connection with their enterprises and testimony indicating that Crimmins had acted as counsel for the Rodgers. And, in the face of a mass of testimony, it seems highly improbable that Crimmins, an experienced lawyer, could have been as ignorant as he professed of the far-flung operations of the Rodgers with regard to the sale to investors of interests in the Syndicate No. 1 properties.

Crimmins testified at great length. He had every opportunity to explain, if there was any valid explanation, his many dealings with the Rodgers that concern us here. The Special Master stated: "The relationship between Crimmins and the promoters (the Rodgers) is not entirely clear, and Crimmins' testimony on the subject impressed your Special Master that there was a desire on his part to hold back the facts rather than present them." We think this was a conservative statement. When it seemed to his own interest to do so, he was evasive when he might well have been frank, and forgetful of many facts and details which, under the circumstances, he would have normally remembered.

■ We come now to the assignment by the Rodgers to Crimmins of a ½ interest in the 200 acre Miller property. This assignment was executed May 17, 1939, but was not recorded until January 25, 1941, more than twenty months after its execution. On the other hand, there were assignments to investors by the Rodgers of fractional interests in the Miller tract which were dated December 18, 1940, and were (with few exceptions) recorded January 14, 1941, eleven days before the recordation of the assignment by the Rodgers to Crimmins.

The Special Master minced no words in his finding as to the Miller tract:

"Your Special Master is convinced from all the facts and circumstances that Crimmins knew that interests were being sold in Syndicate No. 4 during this period and knew the Miller 200 acre lease was included in the syndicate, and that by holding his assignment off the record during this period he participated in the fraud of the Rodgers and lost his rights in the Miller 200 acre lease to innocent purchasers for value."

It is not necessary for us to go so far.

The circumstances surrounding this assignment were also quite unusual. It was made upon an inadequate consideration passing to the Rodgers—past indebtedness—and the Rodgers further assumed an added burden by agreeing to drill two wells on the Miller tract at an estimated cost that greatly exceeded the Rodgers' indebtedness. The excuse offered by Crimmins for the very long delay in recording the assignment was that he believed the Rodgers to be honest, which is exactly what they were not.

Since the recordation of the assignments to the investors in the Miller tract was prior to the recordation of the Crimmins' assignment, Crimmins bases his priority on the fact that these investors had actual knowledge of the Crimmins' assignment and hence they could not claim to be purchasers in good faith without notice. Crimmins testified that he gave notice of his claim to lawyers representing these investors. There was no showing as to just which investors these lawyers represented. Crimmins' testimony here was utterly unsupported by other evidence and was vigorously denied by Maurice Chaitkin, of counsel for investors. The Special Master believed Chaitkin.

What has been previously said about notice to Crimmins of the nature and extent of the operations by the Rodgers as to Syndicate No. 1 applies with added force as to the assignment to Crimmins of the one-half interest in the Miller tract. For before Crimmins recorded the Miller assignment, the Securities and Exchange Commission had started an investigation which later led to indictments being brought against the Rodgers, to bankruptcy proceed-ings against some of the Rodgers' companies and foreclosure proceedings against the Rodgers' properties. In the face of all this, Crimmins seems to have made no claim either to the properties covered by Syndicate No. 1 or in the Miller tract. The long delay by Crimmins in the recordation of the Miller assignment is indeed passing strange under the circumstances, particularly in view of the fact, already stated, that Crimmins made no claim whatsoever in any of these properties until he filed his answer in the instant civil action.

We therefore, uphold the findings of the Special Master, confirmed by the District Court, which were adverse to the claims of Crimmins and favorable to the claims of the investors, both as to Syndicate No. 1 and the Miller tract. The judgment of the District Court is affirmed.

Affirmed.