See also, D.C., 114 F.Supp. 427.

**UNITED STATES of America,**
**Plaintiff,**

v.

**SOUTHERLY PORTION OF BODIE ISLAND, NAGS HEAD TOWNSHIP, DARE COUNTY, STATE OF NORTH CAROLINA, and W. A. Worth et al., and Unknown Owners, Defendants.**

**Civ. No. 262.**

United States District Court
E. D. North Carolina,
Elizabeth City Division.

Aug. 16, 1956.

Clyde E. Gooch, Trial Atty., U. S. Dept. of Justice, Salisbury, N. C., Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for plaintiff.

Brooks, McLendon, Brim & Holderness, Greensboro, N. C., for defendants.

GILLIAM, District Judge.

The report of the Commissioners was filed on January 6, 1956, and on March 5, 1956 the United States moved to set it aside, offering certain objections to the form of the Commissioners' report, the conduct of the hearing before the Commissioners, and alleging in effect that the finding of value is so unreasonable that it should be rejected, or in any event revised downward.

The United States insists, in its first objection, that the report should be set aside because it does not conform to the requirements of Rules 52(a) and 53 of Fed.Rules Civ.Proc. 28 U.S.C.A., in that "it does not contain conclusions of law and findings of evidentiary, basic or primary facts covering those issues of fact and law framed by the Court's instructions to the Commissioners, the pleadings and the testimony presented at the hearing necessary to support the ultimate finding of just compensation made by the Commissioners." Rule 52(a) provides that "In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon * *." Rule 53 sets forth the procedure in the case of reference to a Master.

Rule 71A, which controls here, specifically sets forth that the "Rules of Civil Procedure * * * govern the procedure for the condemnation of real and personal property"; and subsection (h) of the rule contains this provision: "If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53." Under Rule 52(a) the Court is required to "find the facts specially and state separately its conclusions of law thereon"; this the Court has done in the judgment simultaneously filed. But I find no provision in any of the rules which requires a Master or a Commission in Condemnation to find the "evidentiary, basic or primary facts" underlying the ultimate facts which they are commissioner to find. Section (c) of Rule 53 sets forth that: "The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues * * *." In this instance, the Commissioners were directed only to report on a particular issue—the fair market value of the lands involved, and they were not ordered to make either findings of fact or conclusions of law. Subsection (e) of Rule 53 requires the Master to report "upon the matters submitted to him * * * and, if required to make findings of fact and conclusions of law, he shall set them forth in the report." It is my opinion that the report filed is in accord with the Rules and the Court's order. The authorities cited by the United States do not sustain a contrary holding. Obviously, as appears in some of the cases cited, there are situations in which the Court must have certain findings in order to intelligently appraise the Commissioners' valuation of the condemned property. This is not that kind of case. Here, the only issue was that of fair market value of a body of land largely undeveloped and unimproved. The Court instructed the Commissioners in writing; the Chairman

of the Commission is an able lawyer of much experience. We may assume, I feel, that these instructions were substantially followed. After hearing and considering the evidence and applying the Court's instructions, the Commissioners reached a finding as to the land's value. What else does the Court need to know in order to determine whether the report should be accepted, rejected or modified in the light of the evidence, which is also before the Court?

Next, the United States attacks the report because the Commissioners failed to rule on "the relevancy and materiality of the evidence when the question was presented by counsel for both parties."

I find no merit in this objection, as the procedure followed seems in accord with the rules and accepted practice. Rule 53(c), prescribing powers of Masters, contains this provision: "He may rule upon the admissibility of evidence unless otherwise directed by the order of reference * * *." The rule, therefore, leaves to the Master whether to rule on the admissibility of evidence or in the alternative to note objections and leave it to the Court upon review to pass upon the objections, as was done in this instance. Admittedly, such course is subject to some objection, but in a case of this nature where the modern trend and the Rules themselves favor a wide rule of admissibility, there is little, if any, risk of prejudice to the rights of the parties.

Counsel for the property owners have cited several cases upholding the course adopted by the Commissioners in this case, among them Kansas Loan & Trust Company v. Electric Railway Co., C.C., 108 F. 702, at page 704, where it is said: "In this connection, the Court observes that at the hearing before the Master, where evidence is offered and its competency or admissibility is objected to by the adverse party, the master should receive the evidence, subject to the objections and the court will be able then to

pass upon the matter on review." Moore's Federal Practice, Vol. 3, pp. 3134–5; Chadeloid Chemical Co. v. Chicago Wood Finishing Co., C.C., 173 F. 797; In re Felts, D.C., 205 F. 983.

■ Of course, there might be a situation where inadmissible evidence of a prejudicial nature is heard by the Master or the Commissioners, evidence which it is reasonable to assume materially affected the finding on the issue or issues presented, and in such a situation, perhaps, the reviewing Court might feel constrained to reject the report. With this idea in mind the Government's claims with respect to the admission of incompetent evidence have been examined and I have failed to find a single instance where the Commissioners heard what I believe to be incompetent evidence which it is fair to assume materially influenced their finding of the value of the condemned land or substantially prejudiced the Government's rights. In this connection it is well to bear in mind Rule 43 which contains this provision: "In any case, the statute or rule which favors the reception of the evidence governs * * *." And as said in Mourikas v. Vardianos, 4 Cir., 169 F.2d 53, 59: "It is quite obvious from the language of this Rule that, in doubtful cases, the doubt should be resolved in favor of the admissibility of the evidence." This approach is particularly appropriate in a case which involves the finding of value—a case where it is utterly impossible to precisely say what does and what does not enter into the decision of what a willing buyer would give and what a willing seller would take.

The Government stresses its attack upon the report because the Commissioners heard evidence as to presence of limenite in the land, saying "the hearing is permeated with irrelevant and immaterial matter, speculative and incompetent testimony, which was not in accord with the Court's instructions to Commissioners as to the standards to be followed * * * for example; * * *. Testimony as to the mineral value based on speculation, tainted with the element of the Government's need, when there was no showing that mineral existed in commercial quantities and that an economic market therefor existed; and, further, testimony of mineral prices, costs of operation, royalties, etc., which is not a proper method of valuing land enhanced by minerals if there is a demand for it."

■ In this connection reference is made to Section 13 of the Court's order filed this day. There the Court states its conclusion that the mathematical computations offered by the property owners with respect to the presence of limenite in the lands are "too speculative, under the circumstances of this case, to be considered as a basis in arriving at the fair market value of the land in question." There the Court further declared: "The Court is also of the opinion that the objections made by the Government to the testimony of the landowner giving his opinion that his land had been increased in value in the amount of $100,000 by the discovery of limenite on it and to the evidence offered by the landowner quoting statements from technical and other publications relating to titanium and its importance to the national defense are not without merit." However strong an argument may be advanced in favor of a holding such evidence incompetent, it seems plain to me that the Government's position was not prejudiced. The finding of the Commission in light of all the evidence indicates beyond question that it did not accept either the computations of the expert mining engineer or the view of the owner with respect to any augmentation of value due to presence of limenite. The market value put upon the land by disinterested and experienced real estate operators for the owner, each of whom declared that he excluded from consideration any added value attributable to the presence of limenite, ranged from a low of $600,000 to a high of $1,-060,500; while all the Government's witnesses placed the valuation in the neighborhood of $200,000 and it is reasonable

to assume that the Commission undertook to the best of its ability to find the true value in the light of these figures and somewhere between the high and the low. And I think it fair to assume that certainly no substantial amount was included because of the evidence with respect to the possible presence of limenite in the land. It seems to me that this latter assumption is logical for two good reasons; in the first place, you would not expect an experienced lawyer and two experienced business men to accord weight to the purely speculative theorizing of the mining engineer or the rather reckless statement of the owner that the value of his land had been increased by $100,000 as a result of the discovery of limenite, with no proof whatever from the landowner that it was there in commercial quantity, and conclusive evidence by the Government that it was not. There is no reason to charge the Commissioners with such stupidity. In the second place, the value found by the Commissioners in the light of evidence of value irrespective of the presence of limenite strongly indicates that they added no substantial amount as a result of this particular type of evidence. Of course, it may be that the Commissioners were influenced in a small degree by evidence in regard to explorations for limenite in the immediate area and some on the Worth land. It would seem that even if this be true it was not out of line, since it is well known that even the possibility that there is oil or some valuable mineral under land in a certain area has some effect on the market value of land in that area.

■■ Having found no fault with the form of the Commissioners' report and no error in the conduct of the hearing, I come to a decision of whether to "adopt the report" or "modify it" or "reject it in whole or in part" or "receive further evidence" or "recommit it with instructions" as provided in Rule 53(e) (2). There would, in my opinion, be no point in receiving further evidence or recommitting with instructions, so it narrows to whether the report should be adopted, modified or rejected. It is not an easy decision. My belief is that the value fixed by the Commissioners is probably greater than the land would have sold for on the open market on the date of the taking. I have known the land for many years and am acquainted in somewhat more than a general way with its nature and topography, the uses to which it might be put, and the factors which might have influenced the market value. And I have acquainted myself with the evidence heard by the Commissioners. I am quite sure that the valuation found by the Commissioners is greater than I would have found from what I have seen and upon the transcript of the evidence. However, the Commissioners, who are experienced men and entirely impartial, viewed the lands from the air, from the water and on the ground, and, besides, heard the witnesses give their testimony. I have the utmost confidence in their integrity and their judgment. There is no reason to question either. Under the rule and the cases I must accept their finding unless I find it "clearly erroneous". This I do not and cannot find. It is one thing for me to feel that I would have placed a lower value on the land and quite another thing for me to find that their finding is clearly erroneous and substitute my own finding for theirs, ignoring their judgment and integrity, the fact that they critically inspected the land, and also the fact that they heard the witnesses give their testimony.

The controlling rule in this situation is well put in Adamson v. Gilliland, 242 U.S. 350, 353, 37 S.Ct. 169, 170, 61 L.Ed. 356: " * * * the case is preeminently one for the application of the practical rule that so far as the finding of the master or judge who saw the witnesses 'depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable.' * * * "

See also Santa Cruz Oil Corporation v. Allbright-Nell Co., 7 Cir., 115 F.2d 604, 607: "Much labor and thought was given to the matter by an experienced Master * * *. He heard, saw and observed the witnesses and was in a better position to judge of their credibility and the weight to be given their testimony than either the District Court or this court, neither of which has had such an opportunity. To set aside his findings 'unless clearly erroneous' is not only contrary to the rule quoted and the accepted practice, but amounts to a trial de novo by the reviewing court with no assurance that any better or more accurate results could be achieved."

The property owner has moved to tax the Government with costs incurred by him in presenting his testimony before the Commissioners. On the face of it there appears strong reason for allowing the motion, which is aptly stated in Grand River Dam Authority v. Jarvis, 10 Cir., 124 F.2d 914, 916: "The reason therefor [taxing costs against condemner] is that to take the land against the landowner's wishes and then charge him for the cost of taking would violate the constitutional prohibition against taking of private property without just compensation. Lewis on Eminent Domain, 3rd Ed. Sec. 812, states the rule as follows: 'It seems to us that courts should be guided by the following principles and consideration in the matter of costs: By the Constitution the owner is entitled to just compensation for his property taken for public use. He is entitled to receive this compensation before his property is taken or his possession disturbed. If the parties cannot agree upon the amount, it must be ascertained in the manner provided by law. As the property cannot be taken until the compensation is paid, and as it cannot be paid until it is ascertained, the duty of ascertaining the amount is necessarily cast upon the party seeking to condemn the property, and he should pay all the expenses which attach to the process. Any law which

casts this burden upon the owner should, in our opinion, be held to be unconstitutional.' "

This is the only case cited by the owner to avoid the general rule set out in United States v. Chemical Foundation, Inc., 272 U.S. 1, 20, 47 S.Ct. 1, 71 L.Ed. 131, and many others, that in the absence of statute directly authorizing it, Courts will not give judgment against the United States for costs and expenses. This rule has been applied to condemnation in several cases, among them United States v. Knowles' Estate, 9 Cir., 58 F.2d 718. But upon examination, it is found that the Grand River Dam Authority case fails to support the contention, for there the question of taxing costs against the United States was not presented. It is stated in the opinion, 124 F.2d at page 917: "There is present here no federal question. It is simply a question of examining a legislative enactment in the light of the state constitution to determine if authority exists in the constitution for the enactment of the statute."

It is necessary, therefore, in view of the rule quoted above, to determine whether under the present law there is statutory law directly authorizing the Court to tax costs incurred by the owner against the United States in condemnation cases.

Rule 54(d) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States * * * shall be imposed only to the extent permitted by law."

And Rule 71A(*l*) provides: "Costs [in condemnation cases] are not subject to Rule 54(d). The effect of these rules, it is argued, is to abrogate the rule against taxing costs against the United States in condemnation cases; but I hold the contrary opinion. In view of the firmly grounded rule against taxing costs against the United States in the ab-

sence of a statute directly authorizing it, I believe that if Congress had so intended, clear and definite language would have been employed. It is more reasonable to interpret Rule 71A(*l*) as eliminating condemnation cases from the provision of Rule 54(d) for taxing "costs * * * as of course to the prevailing party." Otherwise, all costs might be taxed against the owner in a condemnation case. My opinion is in accord with that of the Advisory Committee on Rules as set out in the notes as follows: "Since the condemnor will normally be the prevailing party and since he should not recover his costs against the property owner, Rule 54(d) * * * is made inapplicable. Without attempting to state what the rule on costs is, the effect of subdivision (*l*) is that costs shall be awarded in accordance with the law that has developed in condemnation cases. * * * Even if it were thought desirable to allow the property owner's costs to be taxed against the United States, this is a matter for legislation and not court rule."

A judgment is entered herewith adopting the report of the Commissioners, but disallowing costs to the owner.