Hope T. STALVEY, Appellant,
v.
The PURE OIL COMPANY, a Corpora-
tion, Appellee.
No. 9790.

United States Court of Appeals
Fourth Circuit.

Argued April 5, 1965.

Decided May 31, 1965.

D. W. Green, Jr., Conway, S. C. (Bur-
roughs & Green, Conway, S. C., on brief),
for appellant.

John B. McCutcheon, Conway, S. C.
(Suggs & McCutcheon and Allen L. Ray,
Conway, S. C., on brief), for appellee.

Before BOREMAN, BRYAN, and J.
SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

At issue on this appeal is the right of
the Pure Oil Company [hereinafter
Pure] to cancel a lease entered into with
Hope T. Stalvey (now Godefroy) on June
1, 1958. Suit was brought by the lessor
in the Court of Common Pleas for Horry
County, South Carolina, to collect rent
allegedly in arrears and to have the lease
presently involved declared a valid and
enforceable obligation between the par-
ties. The lessee removed the matter to
the district court on the basis of the di-
versity of the citizenship of the litigants.

The lot leased by Pure fronted on
Highway 17 within the corporate limits
of Myrtle Beach, South Carolina, and it
and the structures located on it had been
used for some time prior to the execution
of the lease for the operation of a service
station selling petroleum products, acces-
sories, and services to both passenger ve-
hicles and trucks. The lease was for a
period of ten years, with two five year
renewal options, at a minimum monthly
rental of $300.00 per month. Among its

provisions, the lease (which had been prepared by Pure) contained the following language:

"8. If, at any time during the term of this lease or any extension hereof, the use of the leased premises as a service station for the sale of petroleum products, automobile accessories and service, shall be prevented, suspended or limited by any zoning statute or ordinance, or any other Municipal or Governmental action, law or regulation; or if the use of said premises for such purposes be affected or impaired by the widening, altering, or improving of any streets fronting or adjoining said premises; then in any of such events Lessee may cancel this lease by giving thirty (30) days written notice thereof to Lessor. During temporary closing of streets, for repaving or other purposes, rent shall cease if Lessee closes the service station on said premises, and the term of this lease shall be extended for a period equal to the time said station is so closed."

Attached to the lease was a map of the leased property, which was described by metes and bounds in the lease. This map showed Highway 17 with a width of one hundred feet; it also showed a gasoline pump island belonging to the lessor located slightly within the highway right-of-way.

On June 1, 1958, Highway 17 was paved only to the extent of twenty-four feet. Subsequently the paved width was extended to eighty-six feet, and curbing and guttering were installed about eight feet from the property line of the leased lot. Prior to the installation of the curbing, Pure was given a chance to designate to the South Carolina Highway Department where it desired to have entrances to and from Highway 17 constructed, but it chose not to avail itself of this opportunity.

By letter of October 3, 1961, Pure advised the lessor that it would not deal with the South Carolina Highway Department and that it would terminate the lease as soon as the highway improvement work interfered with the use it was then making of the premises. Upon receipt from the lessor of a letter disputing its right to cancel because of the highway improvements, Pure dispatched another letter, dated November 14, 1961, asserting its "right to terminate on any altering of the street from the condition that existed at the time the lease was entered into, which impairs the use of the leased premises as a service station." By a letter dated January 29, 1962, Pure purported to terminate the lease, and the present action was commenced in due course.

By consent the matter was referred to a special master who, after considering the evidence and hearing arguments of counsel, found as a fact that

"the use of the premises as a service station for the sale of petroleum products, et cetera, was not affected nor impaired by the widening, altering or improving of the streets fronting and adjoining the leased premises, within the terms of the lease."

Accordingly, the master ruled that Pure was not entitled to cancel the lease and that the lessor was entitled both to have the lease declared a valid and subsisting obligation and to a money judgment for rentals in the amount of $300.00 per month with interest since February, 1962.

Pure subsequently filed certain exceptions to the report of the master which were considered by the district court, along with the evidence introduced at the proceeding before the master. The district judge concluded that certain key factual findings by the master and his legal conclusions based thereupon were clearly erroneous. He therefore set aside the master's report and dismissed the lessor's complaint. This appeal followed.

■ At the outset it is appropriate that we state the narrow question which we must decide on this appeal: Did the court below err in holding the master's

findings of fact[1] and legal conclusions clearly erroneous? The resolution of this question in turn depends, as the parties seem agreed, upon the construction placed upon the lease language which gave the lessee the right to cancel "if the use of said premises [as a service station for the sale of petroleum products, automobile accessories and service] be affected or impaired by the widening, altering, or improving of any streets fronting or adjoining said premises * * *." As the district judge read this language, its plain and ordinary meaning and clear intent was to give Pure an opportunity to cancel the lease if street and highway improvements resulted in an impairment of its service to vehicles of any type, including trucks.[2] The master had taken a more restrictive view of the cancellation provision, holding in effect that since the lease (which was drawn by Pure) did not expressly provide for the use of the premises as a service area for trucks, the lessee was not entitled to cancel simply because the highway work substantially affected the servicing of trucks. After a careful review of the record and the arguments advanced by counsel, we are of the opinion that the district judge has correctly ascertained what the parties intended at the time they entered into the lease presently before us. Under this lease, the lessor would hardly be heard to assert that Pure was not granted the right to service trucks and sell them fuel, for provision is made for the use of the premises "for the sale of *petroleum* products, automobile accessories and *service.*" (Emphasis added.) We think the rights of service and cancellation afforded by this instrument are coextensive.

■ On several occasions in his written opinion, the master noted that the street improvements at no time involved an actual appropriation of any part of the leased premises. We agree with the district judge that this lease did not make some taking of the leased premises a condition precedent for cancellation by the lessee. The parties could have so provided, but instead they stated, in the words of the district judge, "if the *use* of the premises for the purposes indicated is *affected* or *impaired*, by either the widening or the altering or improving of the streets, the lessee may cancel."

Furthermore, we see no merit in the lessor's contention that no right of cancellation arose upon the occurrence of the highway improvements because those improvements merely made it impossible for the lessee to continue operating its business within a highway right-of-way of which it had actual notice at the time the lease was executed. As the district judge noted, the lessor demised for a term not only the described lot but also "all appurtenances thereto belonging, or in any wise appertaining, and all right, title and interest of lessor in and to any and all roads, streets, alleys and ways bounding said premises." There is uncontradicted testimony that at the time the lease was executed, the lessor was using[3] and for some time theretofore had been using the area in front and to the side of her lot in operating the service station because the full rights-of-way shown on recorded real estate plats were not being utilized for street and highway purposes. As a matter of fact, at the time the lot was leased, the lessor's gasoline pump island was located entirely within the acknowledged highway right-of-way. Under these circumstances, it was altogether reasonable for the lessee to insist that it have the right to cancel if these conditions were changed to its detriment, and we think the

1. Rule 53(e) (2), Federal Rules of Civil Procedure.

2. The testimony of one of the defendant's witnesses was to the effect that between sixty and seventy-five per cent of the station's business prior to the highway improvements was with trucks.

3. The district judge stated that this use was with the license or permission of the appropriate governmental authority.

language in the lease agreement effectively gave the lessee the protection it desired.

There is an abundance of evidence which establishes that the highway improvements did in fact affect the lessee's use of the premises as a service station. The paved width of the highway which passed in front of the station was increased from twenty-four to eighty-six feet, with the result that the highway could accommodate six lanes of traffic, three travelling northward and three southward. The result of this widening of Highway 17 was to move traffic thirty-one feet closer to the leased premises. In addition a raised concrete median was located between the northbound and southbound traffic so that vehicles traveling in one direction did not have completely free access to the lessee's station. The gasoline pump island had to be relocated, and due to the location of the service station itself and the size of the island, it was impossible thereafter to accommodate trucks on both sides of the pump island (as had formerly been possible). The relocated island also made the maneuvering of large motor trucks both in and out of the traffic stream and on the premises themselves difficult. There was testimony that under the circumstances prevailing after the pump island relocation and the installation of the curbing and gutters, most truck drivers would simply drive by Pure's advertised "Truck Stop" to some other station where facilities were not so cramped and where less trouble would be encountered in getting the vehicle in position to be serviced. Finally, the improvements eliminated a sizeable area adjacent to the leased premises which was controlled by the City of Myrtle Beach and used for parking by the lessee without objection from the city. On this evidence, Pure clearly was entitled to cancel the lease.

Perceiving no error by the court below, the judgment of the district court is affirmed.

Affirmed