**HENRY A. KNOTT COMPANY, DIVISION OF KNOTT INDUSTRIES, INC., a Maryland corporation, Appellant,**

**v.**

**The CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF WEST VIRGINIA, A West Virginia corporation, Appellee.**

**No. 84–1770.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1985.

Decided Sept. 12, 1985.

Charles W. Yeager, Christopher P. Bastien, Charleston, W.Va. (Steptoe & Johnson, Charleston, W.Va., on brief), for appellant.

Charles Woody, Charleston, W.Va. (Carl L. Fletcher, Jr., Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., on brief), for appellee.

Before RUSSELL, PHILLIPS, and SNEEDEN, Circuit Judges.

SNEEDEN, Circuit Judge:

Henry A. Knott Company, a Maryland corporation, filed a contract action against the Chesapeake and Potomac Telephone Company of West Virginia (C & P) for an alleged breach of an agreement for the construction of a four-story penthouse addition to a telephone building located in downtown Charleston, West Virginia. Knott claimed damages in the amount of $500,000 and invoked the district court's jurisdiction on the basis of diversity. C & P filed a counterclaim against Knott for $153,667.00 and requested a jury trial. Knott alleged that C & P was responsible for the delays in completion of the telephone building construction project and that C & P should bear the costs of the delayed construction.

C & P requested that the court appoint a special master to resolve the complex factual dispute, and on February 25, 1983, with the consent of Knott and C & P, the court referred the case to United States Magistrate Jerry D. Hogg, acting as a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure.[1]  Magis-

---

**1.** Fed.R.Civ.Proc. 53 provides that the court may appoint a special master and that a reference to a master shall be the exception and not the rule. Rule 53(b) provides that a reference shall be made in a non-jury case only if there is a showing that some exceptional condition requires it; however, upon the consent of the parties, a magistrate may be designated to serve as a special master without regard to the provisions of subsection (b). *See also* 28 U.S.C. § 636(b)(2) (judge may designate a magistrate to serve as a

special master, upon the consent of the parties, without regard to Rule 53(b)).  The order of reference to a master may specify or limit his powers or require the master to report upon particular issues.  For the content of the reference order in this case, *see infra* note 2.

A magistrate is subject to Rule 53 requirements on appointment of masters if the order referring the matter to the magistrate expressly provides that the reference is made under Rule 53.  *See* Rule 53(f) of the Federal Rules of Civil

trate Hogg, as special master, heard the evidence and listened to all the witnesses in a trial that began on March 21, 1983, and continued intermittently until July 12, 1983. At the completion of the trial, the parties submitted proposed findings of fact and conclusions of law, and the special master took the matter under advisement.

Almost a full year later, Magistrate Hogg notified counsel that he had entered into a contract for the sale of his house to counsel for C & P and he offered to recuse himself from further consideration of the case at the request of either party. Knott's counsel requested that Magistrate Hogg withdraw from the case in a letter dated March 16, 1984. Magistrate Hogg, acting as special master, never filed findings of fact or conclusions of law.

The parties received no notice of the status of the pending action until June 14, 1984, when the district court issued an order relieving the special master from his duties. No recusal order was entered before the district court decided the case. Without notifying the parties or giving them an opportunity to object, the district court took the full evidentiary record and made findings of fact and conclusions of law based upon the record taken before the special master. On the same day it notified the parties that the reference to the special master was revoked, the district court entered a judgment awarding Knott $23,-540.32 on its claim and C & P $146,833.28 on its counterclaim. Knott filed no post-trial motions in district court before filing its notice of appeal to this Court.

As noted, the parties consented to the referral of this contract case to the special master, and the referral order specifically provided that the master prepare findings of fact and conclusions of law.[2]

Knott argues that the district court erred in deciding the case upon the cold evidentiary record from the special master without giving the parties an opportunity to object and re-submit evidence. C & P argues that Knott waived the right to challenge the procedures when it failed to object before the district court issued its memorandum and order. We find that Knott did not waive its objection and that the district court erred in making findings of fact and conclusions of law based upon the record developed before the special master. We reverse and remand the case for proceedings consistent with this opinion.

I

C & P argues that Knott waived the right to challenge the procedures used below when it failed to object before the district court judge issued his findings of fact and conclusions of law. We recognize that Knott had no notice of the district court's intentions; therefore, we reject C & P's argument that Knott has waived its right to contest the issue on appeal.

C & P insists that Knott knew of the master's plan to recuse himself because Knott had in fact made the request for recusal. Knott, however, could not be expected to anticipate that the master would in fact recuse himself and that the district court would revoke the referral and decide

Procedure. The order in this case specifically provided that the reference was made under Rule 53.

**2.** The Order referring the case to the special master provided as follows:

Upon stipulation of counsel, it is hereby Ordered that this action be referred to the Honorable Jerry D. Hogg, United States Magistrate, as Special Master, pursuant to the provisions of Rule 53, Federal Rules of Civil Procedure, to take and hear the evidence offered by the respective parties and to make his findings and conclusions on all issues presented and recommend the judgment to be entered thereon.

The Magistrate is authorized and empowered to do all things and to make such orders as may be required to accomplish a full hearing on all matters of fact and law in issue in this case. The Magistrate is directed to commence the hearing hereof on or about March 15, 1983, and to proceed promptly with the same. Counsel for both parties will exchange and file briefs within 14 days after the close of the hearing, and the Magistrate will provide counsel with a copy of his report within 14 days after briefs are received.

the case without alerting the parties. The record shows that Knott received no formal notice that the reference order to the master would be revoked until the district court actually revoked the reference and decided the case upon the evidentiary record produced during the trial before the master. At oral argument, counsel for Knott also represented that he had no informal notice prior to the district court's decision. Thus, Knott clearly had no opportunity to object and request either a trial *de novo* or a hearing in which it could present the testimony of certain witnesses firsthand.

C & P cites *W.R.B. Corp. v. Geer*, 313 F.2d 750 (5th Cir.1953), as holding that a party must timely demand a trial *de novo* or a partial re-hearing upon the death or disability of a master to whom a case has been referred under Rule 53 of the Federal Rules of Civil Procedure. We agree with the general principle enunciated in *Geer;* however, the facts in this case are different from the facts in *Geer*.

In *Geer*, a complex case between contractors and subcontractors was referred to a master under Rule 53. After presentation of the evidence was complete, the parties submitted memorandums to the master. The master was requested to file a report, but the referral order did not ask the special master to make findings of fact and conclusions of law. Before filing a report, the master died.

The district court in *Geer* entered an order appointing a successor master and directing the new master to decide the case on the basis of the record taken before the original master. Thus, the party in *Geer* could have objected to the replacement procedure before the decision was rendered. The successor master filed a report and the district court adopted it. The contractors objected to the substitution of a successor master only after they found out the result of the case. The Court of Appeals for the Fifth Circuit held that the contractors did not object to the reference to the successor

master at the time it was done; and, therefore, they could not contend on appeal that the district court erred in failing to hold a partial rehearing of some evidence or to conduct a complete retrial.

■ This case is different from the *Geer* case in that Knott had no notice or opportunity to object before the decision was made to substitute the district judge for the original master. The parties did submit proposed findings of fact to the master; however, they had no opportunity to argue the case before the district court judge prior to the time the decision was rendered. Knott did not fail to appear at a status conference to discuss whether or not the case could be decided based upon the trial transcript. *See, e.g., Townsend v. Gray Line Bus Co.*, 767 F.2d 11, 18 (1st Cir.1985) (Counsel waived right to new trial on grounds that original judge died by failing to appear at a successor judge's status conference.). Knott took no actions that would indicate that it was willing to waive a new trial, if the master did in fact recuse himself. *See Missouri Pacific Truck Lines, Inc. v. United States*, 2 Cl.Ct. 421, 424 (1983). Thus, we hold that Knott did not waive his right to object on appeal.[3]

## II

If the parties had been notified that a successor judge was to decide the case based upon the record developed before the first judge, before they knew the outcome of the case, they may well have consented to participating in a partial re-presentation of selected evidence before the new judge or to allowing the new judge to decide the case from the record without the benefit of any live testimony. In the procedural posture of this case, however, we are squarely presented with the question of whether or not a full trial *de novo* must be granted, if a party requests it, when a special master, who has presided over a non-jury trial pursuant to Rule 53, dies or is disqualified

---

**3.** Knott did not file a motion for reconsideration or a motion for a new trial or any other post-trial motions; however, he is not required to do so in order to preserve his right to an appeal on this issue.

before he makes findings of fact and conclusions of law?

Knott insists that the Fourth Circuit case of *Whalen v. Ford Motor Credit Co.*, 684 F.2d 272 (4th Cir.1982) (en banc), is directly on point. In *Whalen,* this Court held that, if a trial judge died or was disqualified from deciding a civil jury case before a verdict is returned, then a substitute judge could not continue the case unless the parties consented. 684 F.2d at 274. There are striking similarities between this case and the *Whalen* case; however, *Whalen* is not sufficiently on point so as to render a clear answer to the question before us.

In the *Whalen* case, Judge Blair was presiding over a jury trial between a partnership and a credit company; and, after three weeks of testimony, he died and was replaced by Judge Murray. At that time, one of the parties moved for a new trial and argued that under Rule 63 of the Federal Rules of Civil Procedure,[4] a successor judge must grant a new trial unless a verdict has been returned. Judge Murray ruled that Rule 63 did not apply in a jury case and continued the trial before the same jury. A three-judge panel affirmed this decision, but the Fourth Circuit Court of Appeals, sitting *en banc,* reversed the district court in a 5 to 4 decision. *Whalen* was the first case to address the question of judge substitution under Rule 63 in a civil jury trial in which the jury had not yet returned a verdict. *See generally* Comment, "The Case of the Dead Judge: Fed. R.Civ.P. 63: *Whalen v. Ford Motor Credit Co., "* 67 Minn.L.Rev. 827 (1983) (Review of pre-*Whalen* cases and state court practice).

This case is different from *Whalen* in that the trial was not held before a jury,[5] and in that the initial proceedings were held before a special master, not a district court judge. Also, this case is different from the *Whalen* case in that Rule 63 on its face applies to district court judges and not to masters who are specially appointed by consent.[6]

If, in this case, portions of the trial had been held before a district judge who later died or was disqualified before making findings and conclusions, then a successor judge could not continue the case, unless the parties consented. *See, e.g., Townsend v. Gray Line Bus Co.,* 767 F.2d 11, 18 (1st Cir.1985) (Implications of Rule 63 and constitutional considerations require new trial where trial judge dies before filing findings and rulings); *Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982) (district judge issued findings from the bench but successor judge ordered new trial); *Arrow-Hart, Inc. v. Philip Carey Co.,* 552 F.2d 711, 713 (6th

---

**4.** Rule 63 of the Federal Rules of Civil Procedure provides as follows:

> *Rule 63. Disability of a Judge*
>
> If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

The decision in *Whalen* rested mainly upon an analysis of the history of Rule 63, especially the Advisory Committee on the Federal Rules of Civil Procedure meeting transcripts in which the content of Rule 63 was discussed. *See Whalen v. Ford Motor Credit, supra* at 275–77. Rule 63 on its face does not govern proceedings before a master.

**5.** Initially, the plaintiff requested a jury trial, and the record was not clear as to whether the jury trial had been expressly waived at the time the parties consented to a trial before the master. In response to questioning at oral argument, counsel for Knott stated that the parties had waived a jury trial in this case. The use of a master does not *per se* violate the Seventh Amendment right to a jury trial; but, if the master makes no factual findings or his findings are unclear, the parties must be able to present their case to the jury. *Sutton v. Johnson Cotton Co.,* 114 F.2d 302 (4th Cir.1940) (master's report may be submitted to jury, but jury makes final determinations on issues of fact).

**6.** There is no federal rule of procedure similar to Rule 63 that applies in a case involving the death or disability of a master. *See* Wright & Miller, *Federal Practice & Procedure* § 2611 (1985).

Cir.1977) (district judge died before making findings of fact); *Brennan v. Grisso,* 198 F.2d 532, 533 (D.C.Cir.1952) (new trial ordered upon death of trial judge); *Arrow-Hart, Inc. v. Covert Hills, Inc.,* 71 F.R.D. 346, 348 (E.D.Ky.1976); *Burrill v. Shaugnessy,* 9 Fed.R.Serv. 918, 919 (N.D.N.Y. 1946); *Ten-O-Win Amusement Co. v. Casino Theatre,* 2 F.R.D. 242 (D.C.Cal.1942) (judge died before signing findings of fact and conclusions of law). *But see Matter of Estate of Cassity,* 656 P.2d 1023, 1025 (Utah 1982) (substitute judge in bench trial may decide case based upon transcript, if credibility of witnesses not at issue). The case at hand is similar to the *Whalen* case in that the referral order placed the special master in the same role as a district court judge because the master was required to make findings of fact and conclusions of law. It was the special master who heard the live testimony of the witnesses and had the opportunity to judge their credibility. The district judge in this case did not rehear any of the witness' testimony. In fact, he decided the case based solely upon a record, which is typically the function of an appellate court, not a trial court. The person who decided the case was not the person who heard the case presented. Having the same judge preside throughout the trial is even more important in a case that is not tried before a jury, because it is the judge who will make the decisions as to which witnesses are more credible based upon the live testimony and demeanor of the witnesses.[7]

We are confronted with a difficult choice between two possible alternative procedures. We could accept Knott's argument that Rule 63 and the *Whalen* rationale should apply to cases in which a master dies or is disabled or we could adopt a procedure that would require re-trials before a successor master or a successor judge only in those cases in which the credibility of the witnesses is a factor.[8] The two cases that have dealt with the problem of a master who dies or is disqualified before rendering a decision have reached opposite conclusions.

C & P argues that the case of *D.M.W. Contracting Co. v. Stolz,* 158 F.2d 405 (D.C.Cir.1946), *cert. denied,* 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947), should be followed. In *Stolz,* hearings were held before a special master pursuant to a Rule 53 referral and the master died before he filed the report. A new successor master made findings of fact and conclusions of law based upon the existing record over the objection of one of the parties, which filed exceptions to the master's report. The district court adopted the findings on the grounds that under Rule 53 the master's report is advisory and without effect until confirmed by the court.[9] *Id.* at 407.

The Court said as follows:

7. Rule 63 on its face does not distinguish between jury and non-jury trials, and it also does not explicitly deal with the question of what procedures are to be followed in the case where a judge dies or is disqualified *before* a verdict or judgment is rendered. But in *Whalen,* the Court interpreted the rule as implicitly prohibiting the substitution of a judge before a verdict or findings of fact are returned. See *Whalen, supra* at 274–75. The alternative view, rejected by the majority in *Whalen,* was that the rule's silence left the question of whether substitution could be permitted open to the discretion of the trial judge.

8. Two leading authorities on federal procedure suggest that the proper means of resolving the dilemma should depend upon the type of evidence presented before the first master. *See* Wright & Miller, *Federal Practice & Procedure* § 2611 (1985) (Any critical witnesses, whose credibility would be important, must be heard

again, either by the successor master or the district court); *See* 5A Moore, *Federal Practice* § 53.10[2] (1984) (disputed evidence must be reheard).

9. Fed.R.Civil Proc. 53(e) in part provides as follows:

(e) *Report.*

(1) *Contents and Filing.* The master shall prepare a report upon the matters submitted to him by the order of reference and, if required to make findings of fact and conclusions of law, he shall set them forth in the report. He shall file the report with the clerk of the court and in an action to be tried without a jury, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits.

(2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the

The report of the master is advisory only and is without effect until confirmed by the court. [footnote omitted]. For while he is charged with accepting the master's findings of fact unless clearly erroneous, it is necessary for him to review the transcript of the proceedings to determine if such error has been made, and when objection is taken to the report, as was done here, he is bound to review the transcript of the proceedings, evidence and exhibits to determine for himself whether the master's report should be accepted, rejected wholly or partly, modified, recommitted with instructions, or whether he should receive further evidence.

158 F.2d at 407. The Court discerned no difficulty with two different masters hearing the evidence. The Court said that it was not necessary "to have the master who makes the findings hear the testimony and take the evidence, and his report should be given the same effect as the report of a master before whom the entire proceedings took place." 158 F.2d at 407 (footnotes omitted).

The Court gave two reasons for the result reached. Proceedings before a special master are often lengthy and expensive because matters referred to masters are complicated and thus for practical reasons re-trials should be avoided. As noted above, the Court believed that the findings of the master were only advisory and that the parties would have an opportunity to object to the master's report.[10]

In *Smith v. Dental Products Co.*, 168 F.2d 516 (7th Cir.1948), the district court referred a trademark case to a master for an accounting of damages for trademark infringement. The master died after hearing all the evidence, but before making any findings of fact or a report. The district court reviewed the transcript, and had the parties present written briefs and make oral arguments and then entered final judgment against the defendant, without including special findings of fact. The defendant appealed, arguing that the district court should have referred the case to a second master for a *de novo* hearing or that the Court itself should have reheard the evidence. The defendant maintained that the judge violated Fed.R.Civil Proc. 52(a), by not filing special findings of fact and that the lack of findings by the person who heard the evidence constituted a violation of due process. *Id.* at 518. The Court first held that the district judge had committed error by not filing findings of fact. The Court also held that due process required the district court to direct a trial *de novo* before another master or before itself. *Id.* at 519. The Court said:

The evidence was controverted; several hearings were had, controverted testimony was submitted and the master himself remarked that the status was such that he might require the submission of further evidence. [T]he Master's judgment upon the credibility of the witnesses appearing, we can never know. [W]hat the

---

master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

Rule 53(e)(4) provides that the effect of a master's report is the same whether or not the parties have consented to the reference. The parties may stipulate that a master's findings of fact shall be final.

10. In this case, we note that the parties had no opportunity to object to a master's findings because the case was not referred to another successor master. In effect, the parties lost the opportunity to object to a master's report as well as their opportunity to have the facts found by the same judge who heard the evidence. The parties, of course, may consent to the taking of evidence before a master and to the decision being rendered on the basis of this transcript; however, the parties did not consent to such a procedure in this case. *See U.S. v. Southerly Portion of Bodie Island*, 19 F.R.D. 313, 315 (N.C. 1956) (master to report on issue of fair market value of land and not asked to make findings of fact and conclusions of law), *modified*, 246 F.2d 330 (4th Cir.1957).

Master thought about the witnesses, what he would have found as a matter of fact as to the verity of the testimony, matters which are part and parcel of the purpose of the reference to the Master to make findings and report to the Court, are absent....

*Id.* at 518. The Court noted that the district court at no time had an opportunity to see the witnesses. The defect, according to the Seventh Circuit, was the failure of the one who heard the evidence to be the one who rendered the decision. The Court reasoned that a due process hearing was designed "to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone and to reach his conclusion uninfluenced by extraneous considerations." *Id.* at 519.

■ We find that the *Stolz* case and the *Dental Products* case are reconcilable only if one takes the view that the evidence presented in the *Dental Products* case was hotly disputed and that the evidence in the *Stolz* case was not disputed. *See* 5A Moore, *Federal Practice* § 53.10[2] (1984) (commenting on *Stolz* case and *Dental Products* case). We conclude that the reasoning of the *Dental Products* case is more persuasive than the reasoning of the *Stolz* case because it stresses that a successor judge simply cannot make credibility determinations based upon the record. A hearing *de novo* before a new successor master or before the district court must be conducted if the case requires the trier of fact to make credibility determinations concerning the testimony of witnesses; other-

wise the parties right to a full due process hearing would be severely undercut.

This case is somewhat different from the *Stolz* case in that no findings were prepared by a master for a judge to review and instead of a successor master there was a successor judge. We do not agree with *Stolz*'s assumption that a master's factual findings may be easily disregarded by a district court judge.[11] Deference to the trier of fact, that is, the person who sees the witness and hears the testimony, is an essential feature of the adversary trial and the notion that the person who hears the testimony should be the person who decides the case is part of our conception of a fair trial. The problem of the successor judge, especially in the case before us, is that one person hears the testimony and another person makes the factual findings without having seen or heard the witnesses. This separation of a trial judge's functions without the consent of the parties, seems to us to impinge upon the integrity of the fact-finder's role. Deference to such findings, by a district court or an appellate court, would be misplaced in such a case.[12] To the extent that the *Stolz* case does not require a credibility determination to ascertain the need for a new trial, we decline to follow the rationale of the Court of Appeals for the District of Columbia Circuit in *Stolz* and adopt the view articulated in the *Dental Products* case. In light of the fact that the substitution of a master or a judge for a master is not expressly covered by Rule 63 and in an attempt to encourage efficiency and to avoid unreasonable burdens upon the litigants, we adopt the credibility test rather

---

**11.** The standard of review in the Fourth Circuit is that the district court must accept the findings of fact of the master unless they are clearly erroneous. *See, e.g., United States v. Moore,* 361 F.2d 494 (4th Cir.1966); *Stalvey v. Pure Oil Co.,* 346 F.2d 1009 (4th Cir.1965); *London v. Troitino Bros.,* 301 F.2d 116 (4th Cir.1962); *Carpenter v. Union Ins. Soc'y of Canton, Ltd.,* 284 F.2d 155 (4th Cir.1960); *Cunningham v. United States,* 270 F.2d 545 (4th Cir.1959); *United States v. Twin City Power Co.,* 248 F.2d 108 (4th Cir. 1957).

**12.** Findings of fact by a master that are affirmed by the district court are entitled to a

high standard of deference on appeal before a Circuit Court. *See Carpenter v. Union Ins. Soc'y of Canton, Ltd.,* 284 F.2d 155, 158 (4th Cir.1960); *Crimmins v. Woodson,* 177 F.2d 788 (4th Cir. 1949); *Beckley National Bank v. Boone,* 115 F.2d 513, 515 (4th Cir.1940). *Cf. Bennerson v. Joseph,* 583 F.2d 633, 641 (3rd Cir.1978) (New trial granted when district court decided case upon different theory than that relied upon by special master and used individualized findings of fact dependent upon credibility determinations which master had not made).

than the *per se* rule announced in *Whalen.* The credibility rule would allow a district court judge to substitute himself or another master if the successor would not be required to ascertain the credibility of any of the witnesses in order to make the factual determinations in the case.[13] We recognize that in most bench trials, a master must decide many questions of fact that depend upon the credibility of witnesses and thus it will be a rare case in which a successor master may decide a case solely upon the cold record without rehearing at least some of the testimony. However, adopting the credibility test allows a trial judge some flexibility in that he is not automatically required to grant a complete new trial in each case in which a special master dies, is disqualified, or resigns.[14]

The credibility test allows the district court judge who referred the case to the master to review the record and ascertain what testimony needs to be repeated or to order a new trial if necessary. In cases involving consent referrals to a special master, the parties will be on notice that such a procedure could be imposed, if a special master is unable to complete his duties, and in this case, the parties will suffer no harm, because we are remanding the case for a new trial in light of the belief that the case involved disputed questions of fact dependent upon credibility determinations that need to be made by the trial judge.

In other judicial forums, substitutions in bench trials have been allowed and these courts have used a "credibility test," which allows a successor judge to continue the trial, if the successor judge in order to decide the case need not judge the credibility of the witnesses who had appeared before the previous judge. *See, e.g., In re Schoenfield*, 608 F.2d 930, 935 (2nd Cir. 1979) (new trial held after bankruptcy judge's term expired before completion of bankruptcy proceedings). *New England Coalition on Nuclear Pollution v. United States Nuclear Regulatory Comm'n.*, 582 F.2d 87, 100 (1st Cir.1978) (new administrative hearing denied because no credibility evaluation required); *St. Louis Southwestern Ry. Co. v. Henwood*, 157 F.2d 337, 342 (8th Cir.1946), (new trial not required after bankruptcy judge died), *cert. denied*, 330 U.S. 836, 67 S.Ct. 965, 91 L.Ed. 1282 (1947); The Administrative Procedure Act, 5 U.S.C. § 554(d). *See also FDIC v. Siraco*, 174 F.2d 360, 364 (2nd Cir.1949) (parties stipulated that successor judge could decide case upon transcript, but appellate court ordered new trial anyway for issues involving credibility of witnesses).

Some state courts have also addressed the issue of what to do when a master dies or is disqualified before rendering findings of fact. *See Sunshine v. Sunshine*, 30 Colo.App. 67, 488 P.2d 1131, 1133 (1971) (successor master must conduct hearing *de novo*); *Mills v. Ehler*, 407 Ill. 602, 95 N.E.2d 848, 853 (1950) (master who sees witnesses and determines their credibility should decide the case); *People ex rel Brignall v. Lewe*, 383 Ill. 549, 50 N.E.2d 577, 581 (1943) (successor master must conduct hearing *de novo*); *Coel v. Glos*, 232 Ill. 142, 83 N.E. 529, 530 (1907) (master died before issuing findings and court could not refer case to successor master to make findings based upon transcript); *Heerde-*

---

**13.** The successor judge in this case had an adequate opportunity to review the record and the documentary evidence. The judge did not decide the case in the form of a summary judgment decision and he could not have done so in light of the many disputed issues of fact. In an effort to avoid a new trial, however, we have reviewed the record to determine if there were any grounds upon which summary judgment could have been granted, but have been unable to conclude that there are no genuine issues of material fact. *See Bromberg v. Moul*, 275 F.2d 574 (2nd Cir.1960) (trial record developed before a judge who died may be treated as sup-

porting affidavits and summary judgment rendered if possible).

**14.** In a criminal trial, Rule 25(a) of the Federal Rules of Criminal Procedure governs the issue of judge substitution. Rule 25(a) allows for substitution of a judge in a jury trial, if the successor judge certifies that he has familiarized himself with the record of the trial. *See United States v. Sartori*, 730 F.2d 973, 976 (4th Cir. 1984) (substitute judge may complete criminal jury trial).

*gen v. Loreck,* 17 A.D. 515, 45 N.Y.S. 585 (1897) (substitute referee must conduct new trial).

In conclusion, we hold that, absent the consent of the parties, a successor master or judge may not be appointed to make findings of fact and conclusions of law based solely upon the transcript developed before the original judge or master, unless no credibility determination as to the testimony of the witnesses needs to be made. This rule would apply in cases where the master's referral order specifically required him to make findings of fact and conclusions of law. The parties must be given an opportunity to object and to demonstrate to the court that credibility issues are involved in the case. Of course, the parties may consent to having the entire case decided upon the record or they may agree as to which witnesses need to testify again.

### III

We have found that when a master, whose order of reference calls for findings of facts and conclusions of law, dies or is disqualified before rendering factual findings, a new trial must be granted if the case involves disputed questions of fact dependent upon credibility determinations. We now review the record to ascertain if credibility determinations were required and conclude that such determinations were a part of this case. Knott, the builder, sued C & P for $500,000 in contract damages for delays relating to sidewalk cover, structural steel, elevators, and change orders not in the contract. C & P counterclaimed for $153,667 for Knott's failure to complete the building on schedule. The testimony on several issues was disputed and the district court judge made extensive findings of fact.

C & P's architect, Hoblitzell, for example, testified that the scaffolding proposed by Knott was inadequate. Knott's witness, Dragone, testified that the sidewalk protection scaffolding proposed by Knott was adequate. The trial court found that Knott did not substantiate its claim that the side-walk protection was adequate, and credited C & P's witnesses' testimony that the Knott plan was inadequate. The trial court also found that it was undoubtedly Knott's responsibility to obtain all permits, except the building permits. However, Knott's project manager testified that Knott could not obtain a street permit unless sidewalk protection cover was approved by C & P. Hoblitzell testified that C & P agreed to assist in obtaining the permit by preparing a drawing that could be used in the street permit application. The trial court found that C & P's actions did not contribute to the delay in obtaining the permit. Although this factual determination may be correct, it did require the district court to find implicitly that the testimony of C & P's witnesses was more credible than the testimony of Knott's witnesses.

Additionally, the testimony as to who was responsible for the delay in connection with the erection of the steel was conflicting. Also, the testimony concerning the installation of new elevators required the trial judge to give more credence to one party's evidence than to the other party's evidence. Hoblitzell, C & P's witness, testified that electric service to the elevators was not necessary to locate the threshholds of the elevators. But the Court found that electric service was necessary to set the new elevator doors and concluded that Knott had caused the delay by not installing electric service to the elevators.

In light of the conflicting evidence on several disputed issues of fact, we find that the district court implicitly made credibility determinations and thus the case must be remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.