684 F.2d 272
 Cornelius M. WHALEN t/a Towson Associates Limited
Partnership, to its own use and to the use of
Robert Whalen Company, Inc., Appellee,
v.
FORD MOTOR CREDIT COMPANY, a body Corporate, Appellant.
 No. 80-1496.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 29, 1982.
Decided June 30, 1982.
 
 1
 Paul V. Niemeyer, Baltimore, Md. (Jeffrey D. Herschman, William L. Marbury, Piper & Marbury, Baltimore, Md., on brief), for appellant.
 
 
 2
 David Freishtat, Baltimore, Md. (Michael L. Schwartz, Freishtat, Schwartz & Sandler, Baltimore, Md., on brief), for appellee.
 
 
 3
 Before WINTER, Chief Judge, and BUTZNER, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges, sitting en banc.
 
 
 4
 FRANCIS D. MURNAGHAN, Jr., Circuit Judge, with whom DONALD RUSSELL, WIDENER, ERVIN and CHAPMAN, Circuit Judges, join:
 
 
 5
 Jurisdiction here depends on diversity. Suit was instituted on December 10, 1975. Trial by jury commenced on March 31, 1980 in the United States District Court for the District of Maryland, with Judge C. Stanley Blair presiding. The case grew out of the refusal by Ford Motor Credit Company ("Ford Credit") to close with Towson Associates Limited Partnership ("Towson") (or more precisely, the provider of interim financing, Equibank N.A. ("Equibank")), under a loan commitment to make available take-out financing for a twenty-seven[1] floor apartment and office building complex, provided certain terms and conditions were satisfied. Compliance by Towson with the terms and conditions was required to have been achieved by September 2, 1975.[2]
 
 
 6
 The case was complicated by a number of issues, including (a) whether Towson met the completion requirement, (b) whether an assignment by Towson to Equibank of its interests under the take-out commitment with Ford Credit was absolute, and (c) whether rulings on the admissibility of evidence and the phraseology of instructions related to damages and their methods of calculation were correct.
 
 
 7
 After the taking of three weeks of testimony, Judge Blair on April 20, 1980 tragically and suddenly died.[3] Ford Credit, on the grounds of Judge Blair's death, moved for a mistrial, citing F.R.Civ.P. 63. The Rule, entitled "Disability of a Judge," provides for substitution of a new judge for the one disabled by death or other disability when the disability occurs "after a verdict is returned or findings of fact and conclusions of law are filed."
 
 
 8
 Judge Herbert F. Murray, who had taken Judge Blair's place, considered and denied the motion for mistrial, reasoning that it would be "inconceivable" to hold substitution over the objection of a party of a new judge before return of verdict absolutely forbidden in a civil action when Rule 25(a) of the Federal Rules of Criminal Procedure explicitly permits such a substitution in a criminal setting.[4] In effect, Judge Murray treated the question of whether to substitute a new judge and continue the trial as a matter committed to the new trial judge's discretion, and no doubt perceived force in the argument that the rule was literally silent as to what should happen in a civil case where disability occurs before a verdict is returned or findings of fact and conclusions of law are filed.
 
 
 9
 Judge Murray dealt with a number of civil cases arising in a non-jury trial setting which found substitution before filing of findings of fact and conclusions of law absolutely forbidden, purporting to distinguish them on the grounds that non-jury cases raise "more serious due process issues than if such replacement occurs during a jury trial." Arrow-Hart, Inc. v. Phillip Carey Co., 552 F.2d 711 (6th Cir. 1977); Brennan v. Grisso, 198 F.2d 532 (D.C.Cir.1952); Ten-O-Win Amusement Co. v. Casino Theatre, 2 F.R.D. 242 (N.D.Calif.1942); Burrill v. Shaughnessy, 9 Fed.R.Serv. 918 (N.D.N.Y.1946).
 
 
 10
 We conclude, for the following reasons, that retrial was mandated by the rule, and that consequently there must be a reversal and return of the case to the district court for a new trial:
 
 
 11
 1) The basis for a distinction of non-jury cases from jury cases does not appear to exist for Rule 63 does not differ in what it provides for both types of trials. On the contrary, it clearly calls for like treatment: "after a verdict is returned or findings of fact and conclusions of law are filed."[5] In addition to cases cited by Judge Murray, see: Bromberg v. Moul, 275 F.2d 574 (2d Cir. 1960); Havey v. Kropp, 458 F.2d 1054 (6th Cir. 1972); State ex rel. Lunsford v. Weber, 153 W.Va. 544, 547-48, 170 S.E.2d 671, 673 (1969); Girard Trust Bank v. Easton, 12 N.C.App. 153, 182 S.E.2d 645 (1971), cert. denied, 279 N.C. 393, 183 S.E.2d 245 (1971).[6]
 
 
 12
 2) The supposition is unrealistic that the distinguished group of legal scholars who, as the Advisory Committee on the Civil Rules, prepared the Rules for approval and adoption by the United States Supreme Court meant, by their silence, to permit the possibility of substitution of a judge before verdict when Rule 63 entitled "Disability of a Judge" expressly deals only with substitution of a judge after return of verdict. Inherent in the ascription of such a sub silentio purpose would necessarily be establishment that there had been prior practice in which substitution of a judge after trial began but before return of verdict customarily had been allowed over the objection of one of the parties.
 
 
 13
 But the experience had all been the other way. Research has failed to turn up a single case of substitution before verdict where one of the parties refused to consent. Cf. Substitution of Judge in Criminal Case, 83 A.L.R.2d 1032, 1034, 1036 (1962) ("A substitution of judges during the introduction of evidence, over the objection of the accused, has been held to be error."); Coleshill v. Manchester Corp., (1928) 1 K.B. 785 (Scrutton, J.: "I doubt whether a judge has any jurisdiction to continue the hearing of a case in which witnesses have been called in court in the course of the trial before the jury and another judge....").[7]
 
 
 14
 3) Furthermore, we need not merely rationalize as to the intent of the Advisory Committee on the Civil Rules. The records of their proceedings make crystal clear their intentions.[8] After the Civil Rules were adopted in 1938, the Committee continued its existence to monitor their application and to consider possible revisions. On May 20, 1953 the Committee met, including as members continuously having served since its inception in 1935 the Chairman William D. Mitchell, the Reporter Charles E. Clark,[9] Armistead M. Dobie,[10] and Monte M. Lemann.
 
 
 15
 Responding to suggestions that death of a judge while a long-lasting trial was in progress should not require a substitute judge to start the trial all over again, Judge Clark, as reporter, recommended as an addition to the language of Rule 63 the following:
 
 
 16
 A judge so acting may receive in evidence a transcript of evidence theretofore taken in the case and may accept the testimony therein transcribed except so far as he shall find it necessary to hear witnesses whose credibility must be determined as a step in the adjudication.
 
 
 17
 "Reporter's Draft of Several Amendments, Federal Rules of Civil Procedure, May 11, 1953," at p. 9 (Charles E. Clark Papers, Yale University Library). The recommendation was fully explored:
 
 
 18
 CHAIRMAN MITCHELL: (T)wo or three years ago ... (w)e came to the conclusion that under the existing rule, the only way a judge could take up a case which has been tried by another judge but he hasn't decided it, is by stipulation....
 
 
 19
 ....
 
 
 20
 Here is a case where the trial judge died and you have had a long transcript of testimony taken. He is dead, and there is no law or rule that allows another judge to take over the case on a transcript made by the preceding judge who is now dead. The only way it can be done now is by stipulation. If your adversary won't consent to that, you have to start your case all over again before another judge.
 
 
 21
 ....
 
 
 22
 MR. LEMANN: Apparently it never occurred to us that we ought to permit another judge to come in and act at all if the case had not reached the point of decision by the first judge.
 
 
 23
 CHAIRMAN MITCHELL: That is it.
 
 
 24
 ....
 
 
 25
 MR. LEMANN: ... It didn't occur to anybody, and hadn't for fifteen years except the one guy, that it isn't enough.
 
 
 26
 I wouldn't change the rule just because one guy writes a letter in and says this might happen and counsel might not stipulate....
 
 
 27
 ....
 
 
 28
 MR. TOLMAN: Yes. It is a problem, and I know that the Judicial Conference has discussed this rule several times.
 
 
 29
 MR. LEMANN: They never have recommended a change, though.
 
 
 30
 MR. TOLMAN: That is quite true.
 
 
 31
 ....
 
 
 32
 CHAIRMAN MITCHELL: As I say, I have had a concrete case where the lawyers were very much distressed. They had gone through a long trial and a long record. The judge had died, and there was no relief under the statutes or rules which enabled a new judge to decide the case on the basis of the testimony taken by the dead judge.
 
 
 33
 I suggested they had better try getting a stipulation, and they succeeded in it.
 
 
 34
 ....
 
 
 35
 CHAIRMAN MITCHELL: But what happens when the plaintiff has made out a case and has gone through a long trial and then the judge dies, and he asks the defendant to consent to have another judge decide it on the basis of the old record, and the other side says no?
 
 
 36
 ....
 
 
 37
 MR. LEMANN: It breaks my heart by imagining a sufficiently hard case, but I don't think it is likely to happen. If I had one case in 15 or 20 years, it would have to be very hard to make me change the rule, I think.
 
 
 38
 JUDGE DRIVER: It seems to me we almost have to limit it to cases in which all or substantially all the testimony had been received. Otherwise, we would be compelling the plaintiff to go on the record of witnesses, and the defendant would have flesh-and-blood witnesses in the court ready to testify. If I were the defendant, I wouldn't consent to that arrangement unless I had to.
 
 
 39
 ....
 
 
 40
 MR. LEMANN: Then we would have to rewrite Rule 63, because if you leave it as it is, as Mr. Mitchell pointed out, it restricts it to cases where a verdict has been returned or findings of fact and conclusions of law have been filed by the judge who had died. That is the way it reads now, and that is the way the statute from which it was copied read.
 
 
 41
 CHAIRMAN MITCHELL: That is right.
 
 
 42
 ....
 
 
 43
 CHAIRMAN MITCHELL: I think the amendment proposed is inadequate because it leaves in the provision that the rules don't apply at all unless the judge has made findings. That is aside from the mark. I have the feeling that maybe we had better leave it alone.
 
 
 44
 JUDGE DOBIE: I don't think it is vital. Let's pass it.
 
 
 45
 JUDGE CLARK: All right.
 
 
 46
 3 Transcript of the Proceedings, Meeting of the Advisory Committee on Federal Rules of Civil Procedure, May 18-20, 1953, at pp. 572-579 (May 20, 1953) (Charles E. Clark Papers, Yale University Library).
 
 
 47
 Charles E. Clark, as reporter necessarily the member most familiar with the rules, had earlier expressed the same view that death of the judge before verdict or filing of findings and conclusions necessitated a new trial absent a stipulation of the parties. Professor James William Moore, Judge Clark's colleague at Yale University, and a member of the Advisory Committee on the Civil Rules, who deservedly enjoys a reputation for knowing the rules, replied on November 1, 1938, on "behalf of Dean Clark and myself" to a suggestion that a whole new trial should not be required:
 
 
 48
 ... Dean Clark ... and I feel that it (your case) is not within the literal meaning of the rule (Rule 63) and probably not within the rule even when given a liberal construction. You will note that the rule authorizes another judge to act "after a verdict is returned or findings of fact and conclusions of law are filed." ...
 
 
 49
 ....
 
 
 50
 Although Rule 63 may work harshly in your case, I believe that its requirement that findings of fact and conclusions of law be filed as a condition to action by another judge is sound since in many cases, although a judge may indicate his general decision, there will be considerable dispute over the exact findings of fact to be made.
 
 
 51
 Letter from James William Moore to Douglas Arant, Esq. (November 1, 1938) (Charles E. Clark Papers, Yale University Library).
 
 
 52
 Again, in 1943, Charles E. Clark appended to Rule 63 a comment respecting a contemplated draft of revisions to the rules. He cited the case of Ten-O-Win Amusement Co. v. Casino Theatre, 2 F.R.D. 242 (N.D.Calif.1942), supra, where death interrupted a trial. He concluded: "In such a case, a new trial is necessary." Charles E. Clark, Tentative Draft for Revision of the Rules and Comments Covering the Early Rules, at p. 173 (Advisory Committee on Rules for Civil Procedure: January 16, 1943) (Charles E. Clark Papers, Yale University Library).
 
 
 53
 4) Resort to the contrasting developments of F.R.Civ.P. 63 and its counterpart, F.R.Crim.P. 25, only serves to confirm the conclusion that a new trial is mandated. F.R.Crim.P. 25, when first adopted, contained only what is now Rule 25(b). It was, consequently, in the district court's language, "virtually identical" to Rule 63. The Judicial Conference of the United States in 1963 approved a recommendation "that if a judge dies, becomes ill, or suffers other disability, by reason of which he is unable to continue the trial of a civil or criminal case, provision should be made authorizing the substitution of another judge in the case." Report of the Proceedings of the Judicial Conference of the United States held at Washington, D. C., March 11-12, and September 17-18, 1963, pp. 70-71. The recommendation, which certainly proceeds on the premise that such substitution would not be possible without a rule change, was referred to the respective advisory committees for the civil and the criminal rules.
 
 
 54
 The criminal rules committee proceeded to fashion a proposed Rule 25(a), which was indeed subsequently adopted, permitting substitution of a judge "During trial." That in itself was an acknowledgment by a body knowledgeable about the Federal Rules that in its previous form (now Rule 25(b)), virtually identical with Civil Rule 63, Rule 25 did not permit substitution during trial. Furthermore, the Committee called particular attention to the point, repeating in several publications the following comment: "Notice that Civil Rule 63 is substantially similar to the present version of Criminal Rule 25 so that parallel consideration by the Civil Committee would seem appropriate." See Deskbooks of Meetings of the Advisory Committee on Criminal Rules for January 1964 and October 1964 (Public Files, Library of the Administrative Office of the United States Courts, Washington, D. C.).
 
 
 55
 In face of its own earlier resolution of the issue and of the reiterated suggestion of its sister committee, the Advisory Committee on the Civil Rules took no action. It is difficult to come to any other decision than that the Committee was content to leave Rule 63 as it was, i.e., as still necessitating a trial de novo when the trial judge dies in the course of it, before verdict or the filing of findings and conclusions.[11]
 
 
 56
 5) Reference to the Criminal Rules at the earlier dates when they were first being considered for adoption only supplies telling confirmation of the conclusion that the provision in Rule 25 for specific relief "after a verdict or finding of guilt" must be read not merely as omitting but rather as positively precluding similar relief before verdict or finding of guilt.
 
 
 57
 The fourth draft of the Criminal Rules Committee, dated May 18, 1942, proposed Rule 25 omitting any language as to "before" or "after" verdict or finding of guilt. It simply read:
 
 
 58
 Disability of a Judge.
 
 
 59
 If by reason of absence from the district, death, sickness, or other disability, the judge before whom the defendant was tried is unable to perform his duties under these rules, any other judge regularly sitting in or assigned to the court may perform his duties.
 
 
 60
 The Supreme Court reacted negatively, expressing dissatisfaction with the fact that Rule 25, as proposed, "apparently allows one judge to be substituted for another in the midst of a trial or even after all the evidence has been taken, but before the jury is charged." 3 L. B. Orfield, Criminal Procedure under the Federal Rules, § 25.1.
 
 
 61
 To meet the Supreme Court objection, the Criminal Rules Committee "made changes conforming to the criticism by the Supreme Court." The changes were the insertion in the rule of the words "after a verdict or finding of guilt." As so amended, the rule was acceptable to the Supreme Court. The Supreme Court thus established very clearly indeed that saying "after" in such circumstances negates "before."
 
 
 62
 6) Finally, it has been suggested that F.R.Civ.P. 83 conferred authority on Judge Murray to continue the trial. The last sentence of Rule 83 provides: "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." However, we have demonstrated that Rule 63 communicates a positive prohibition on substitution of a judge prior to verdict where, as here, all parties have not stipulated their consent.[12] Consequently any attempt of the sort suggested, to resort to Rule 83, must fail since it would produce a result "inconsistent with these rules."[13]
 
 
 63
 As additional proof of that rather evident proposition consider that the Criminal Rules had a "virtually identical" analogue to Civil Rule 83. F.R.Crim.P. 57(b) reads:
 
 
 64
 If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.
 
 
 65
 Yet no one, the Supreme Court, the Judicial Conference of the United States, or the Advisory Committee on Criminal Rules suggested that, in light of Criminal Rule 57(b), the amendment which added F.R.Crim.P. 25(a) was consequently unnecessary. On the contrary, they apparently fully appreciated that a rule amendment was essential. No such amendment has ever been made to the Civil Rules, and that, in a nutshell, disposes of the case.[14]
 
 
 66
 In conclusion, it should be observed that our failure to address certain of the questions posed, even though they may arise again on retrial, is not through inadvertence or oversight. While frequently in like circumstances it is appropriate to afford guidance to the trial judge, this in our judgment is not such a case. Our decision that a complete trial de novo was required renders, in many respects, a nullity all that happened following Judge Blair's death, yet to address the unanswered questions would require some attention by us to such materials.
 
 
 67
 Even more significantly, perhaps, the Court finds itself with no fixed uniform view on any of the as yet unresolved issues. It accordingly deems it best to defer consideration and any attempt to dispose of them until they come to the Court after, rather than before, they have been fully litigated.
 
 
 68
 REVERSED AND NEW TRIAL ORDERED.
 
 
 69
 HARRISON L. WINTER, Chief Judge, concurring specially:
 
 
 70
 I concur in the judgment of reversal and the grant of a new trial and in large part in the opinion of Judge Murnaghan.
 
 
 71
 As the opinions of Judge Murnaghan and Judge Butzner fully expose, the legal issue raised by the death of Judge Blair during the course of the trial and the substitution of Judge Murray is a close one. Except for the unseemliness in this case, and the uncertainty in future litigation, of having this issue decided by an equally divided court, I could readily be persuaded to adopt the views espoused by Judge Butzner. Although the framers of Rule 63 and the Congress which approved it may not have intended that it apply in the situation which faces us, I have difficulty in reading into it an implicit prohibition which would limit the far-reaching power to do justice vested in the district court by the last sentence of Rule 83. At the same time I recognize that the courts which have dealt with the problem of the death of the trial judge in the course of a non-jury civil trial have uniformly held that a new trial is mandated. To my mind, a jury trial should be treated differently; but if a majority of our court is unwilling to recognize the distinction, I do not think that I should cast my vote in a way rendering this court powerless to act.
 
 
 72
 From this case one thing clearly emerges and that is the need for further revision of Rule 63, at least when the presiding judge dies in the course of a civil jury trial and there is no proof that the substitution of another judge will prejudice either party. More is at stake than just this case. With the proliferation of the federal trial judiciary and the increased tensions under which all judges live, there is great risk that our dilemma will recur. It is my hope that the Advisory Committee on Civil Rules and the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States will soon address the problem and make a recommendation so that the Judicial Conference, the Supreme Court and the Congress can take appropriate action. To this end I will ask the Clerk of this court to send copies of these opinions to the respective Chairmen of the Advisory Committee on Civil Rules and the Committee on Rules of Practice and Procedure.
 
 
 73
 BUTZNER, J., with whom K. K. HALL, JAMES DICKSON PHILLIPS, and SPROUSE, JJ., join, dissenting:
 
 
 74
 When a judge who is presiding over a civil jury trial dies before a verdict is returned, the question whether to proceed with the trial rests in the sound discretion of the judge to whom the case is reassigned. This principle, as we shall explain in Part II, is firmly grounded on Federal Rule of Civil Procedure 83, which states in part: "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." As a necessary predicate for invoking rule 83, we will show in Part I that rule 63, on which Ford Motor Credit Co. relies, did not require the declaration of a mistrial.
 
 
 75
 * Although there are decisions dealing with substitution of judges in criminal trials and civil non-jury trials, no case precisely on point has been called to our attention. Because a judge is not called upon to make findings of fact or resolve credibility disputes in a jury trial, precedent prohibiting substitutions in non-jury trials does not answer the question presented by this case.[1]
 
 
 76
 No statute or rule expressly confers or denies authority to substitute a judge during the trial of a civil jury case. Rule 63 does not forbid substitution before a civil jury has returned a verdict. It provides:
 
 
 77
 If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.
 
 
 78
 The genesis of the rule establishes that it was not promulgated to bar substitution of a judge before a civil jury returned its verdict. Section 953 of the Revised Statutes,[2] enacted in 1872, provided for the authentication of a bill of exceptions by the judge of the court in which the cause was tried. This provision was interpreted in Malony v. Adsit, 175 U.S. 281, 285, 20 S.Ct. 115, 117, 44 L.Ed. 163 (1899), to mean "that no bill of exceptions can be deemed sufficiently authenticated unless signed by the judge who sat at the trial." In 1900, Congress, reacting to Malony, enacted a statute which allowed another judge to rule on a motion for a new trial or an application for allowance of a bill of exceptions in case of the death of the judge who had presided at the trial.[3] See St. Louis Southwestern Ry. v. Henwood, 157 F.2d 337, 342 (8th Cir. 1946); 11 Wright & Miller, Federal Practice and Procedure § 2921.
 
 
 79
 Rule 63 superseded the statute that was enacted in 1900 and extended it to include all of the duties performed by the judge after verdict or judgment.[4] With regard to these duties, the rule makes no distinction between jury and bench trials. It is simplistic to conclude from this identity of treatment, however, that bench and jury trials, which in many respects are quite different, must be treated the same at a stage of the proceedings on which the rule is silent.
 
 
 80
 Thus, rule 63, the statute from which it was adapted, and decisions dealing with bench trials, do not require the declaration of a mistrial when the presiding judge dies before the jury returns its verdict. Indeed Ford has been unable to cite any authority expressly requiring a mistrial. Such a requirement can only be created by implication, and we decline to expand the scope of rule 63 to reach this unwarranted result.
 
 
 81
 In the absence of any statute, rule, or federal decision foreclosing the substitution of judges in a civil jury trial, primary support for Ford's position necessarily has been predicated on extracts from the private papers of members of the Advisory Committee on Rules. Several facts caution against reliance on these papers. First, they are not a part of the published Notes of the Advisory Committee on Rules, which the committee deemed appropriate for understanding the derivation and interpretation of the rules.
 
 
 82
 Additionally, the committee's discussions in 1953 occurred years after rule 63 was adopted. Reliance on these discussions ignores the Supreme Court's admonition in Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 118 n.13, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980):
 
 
 83
 The less formal types of subsequent legislative history provide an extremely hazardous basis for inferring the meaning of a congressional enactment ... (E) ven when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment.[5]
 
 
 84
 Indeed, this admonition is particularly appropriate with respect to the Civil Rules, because many years ago the Judicial Conference deemed that the official text of the committee's working papers should not be made accessible for the purpose of litigation.[6]
 
 
 85
 The danger of relying on the working papers to authoritatively interpret the rules is illustrated by this case. The discussions and letters that are quoted to support Ford's position did not deal with the present issue. They dealt solely with bench trials and the death of a judge before he filed his findings of fact. It is not surprising that the committee members limited their discussion, for they were responding to inquiries about substitution in non-jury trials. For example, the only case identified by name in the extracts is Ten-O-Win Amusement Co. v. Casino Theatre, 2 F.R.D. 242 (N.D.Cal.1942), which was a bench trial. The committee recognized that substitution in a bench trial would require the second judge to decide the facts partially on the basis of a written transcript and partially on the basis of hearing-in the words of a committee member-"flesh-and-blood witnesses." The problems perceived by the committee do not arise, however, when a judge presiding over a jury trial dies, because the jury, not the judge, finds the facts and assesses the credibility of the witnesses.[7]
 
 
 86
 The primary sources for interpretation of the rules are rightfully limited to the text itself, published Notes of the Advisory Committee, decisions of the courts, and published commentaries. We do not suggest that it was improper to advert to the private papers that members of the Rules Committee have donated to libraries. They are undoubtedly of great interest to scholars of the federal judicial system. Nevertheless, the record of the committee's discussion about a rule long after its promulgation is subject to the general principle that subsequent legislative history is a poor guide for interpretation. Moreover, it is evident from the restrictions placed on the use of the official text of the working papers that the extracts cited to support Ford's position were never intended to be authoritative guides for the interpretation of the rules. That function was reserved for the published Notes of the Committee on Rules.
 
 II
 
 87
 Because neither rule 63 nor any other rule expressly grants or denies a district court the authority to proceed with a pending jury trial when the presiding judge dies, it is necessary to determine what provision the rules make for such a hiatus. The answer, of course, is found in rule 83, which, as we have previously mentioned, states in part: "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." This provision of rule 83 "closes all gaps in the rules."[8]
 
 
 88
 In the absence of any provision governing the procedure that should be followed when a presiding judge dies before a civil jury returns its verdict, there exists a gap in the rules. We believe this gap must be filled by conforming to the mandate of rule 83 and committing the decision whether to proceed with the case to the sound discretion of the district court. When, as here, a district court has exercised the discretion vested in it by rule 83, an appellate tribunal should not interfere "in the absence of a showing of arbitrariness or fundamental unfairness." In re United Corporation, 283 F.2d 593, 596 (3d Cir. 1960).
 
 
 89
 We find support for this conclusion in Colgrove v. Battin, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), where the Court declined to find in rule 48 an implied requirement for juries of twelve.[9] Referring to the generally accepted assumption that "trial by jury means 'a jury of twelve,' " the Court said: "Plainly the assumption of the draftsmen that such was the case cannot be transmuted into an implied direction to impanel juries of 12 without regard to whether a jury of 12 was required by the Seventh Amendment." 413 U.S. at 163, 93 S.Ct. at 2456. The Court therefore found no inconsistency with a local rule adopted pursuant to rule 83 providing for juries of six persons. We, too, refuse to search for implications in order to invalidate the exercise of a district court's discretion under rule 83.
 
 
 90
 Application of rule 83 in this case conforms to the fundamental precept that although individual judges may die or become incapacitated, the court on which they served is a continuing institution. This was the approach taken in St. Louis Southwestern Ry. v. Henwood, 157 F.2d 337, 342 (8th Cir. 1946). There the issue arose in a bankruptcy proceeding where, as here, no rule expressly governed the question of substitution. For this reason, the court's reasoning is instructive:Theoretically and actually, a "Court" is a continuing and continuous institution.... Normally, matters therein flow uninterruptedly onward to finality. A change in personnel of judges during the course of litigation presents a problem of interruption. Such changes have occurred at different stages of suits and with varying results as to whether the successor judge could go forward or should retrace some of the ground travelled by his predecessor.
 
 
 91
 An examination of the reasoning underlying the opinions and producing their results is convincing that the flow of a suit is interrupted by changes in personnel of judges only where justice-for which courts exist-seems so to require. Unless justice demands something else, a different judge takes up litigation where the former judge left off. Where this is not done, it is, broadly, because of something in the past course of the litigation which cannot be found in the status and record existing when the new judge takes hold and which it is necessary for him, in all fairness to the parties, to know. Where it is necessary for him to gain this absent information, he must set back the litigation to the place where he can obtain it.
 
 
 92
 How and by whom is the existence of such necessity to be determined? In some instances, the law speaks through some affirmative legal requirement: Malony v. Adsit, 175 U.S. 281 (20 S.Ct. 115, 44 L.Ed. 163) (1899). In other instances, the successor judge has power, through the exercise of a reviewable judicial discretion, to determine on the situation in which he finds himself.
 
 
 93
 Recognition that a court is a continuing institution places the question of substitution in its proper light. Accepting this premise, the propriety of substitution in a jury case is committed to the discretion of the district judge as an aspect of the court's general authority pertaining to mistrials. In many instances, discretion should dictate a mistrial. In other cases, where the jury, the court, and the parties have invested substantial time and money in the trial and substitution can be made without prejudice, we perceive no sound reason for denying a judge the discretion to proceed with the trial after the death of his predecessor to whom the case had been initially assigned.
 
 
 94
 Rule 63 recognizes that a court is a continuing institution. It was drafted to confer broad discretion on a judge who succeeds an incapacitated colleague. By its terms, the rule empowers the successor to perform the duties authorized by the civil rules after a verdict is returned or findings and conclusions are filed. These duties are not simply ministerial. Included among them are the power to grant or deny new trials, judgments notwithstanding the verdict, relief after judgment, stays pending appeal, and the authority to settle differences about the accuracy of the record. These duties are in many ways as demanding as the duties of a presiding judge before verdict. Nevertheless, Ford has advanced no principled reason why a court should be allowed to perform such important functions after verdict and yet be granted only the power to declare a mistrial before verdict. It is not enough to claim that the draftsmen of the rules assumed that a mistrial must be declared when the presiding judge dies before a verdict is returned. As Colgrove v. Battin, 413 U.S. 149, 163, 93 S.Ct. 2448, 2456, 37 L.Ed.2d 522 (1973), teaches, assumptions of the draftsmen "cannot be transmuted" into implied restrictions on the discretion granted to a court by rule 83 in the absence of authority compelling the assumption. Ford cites no such authority.
 
 
 95
 In concluding that a district court should be permitted to exercise its discretion when the need for substitution arises, we are also influenced by the 1966 amendment to Federal Rule of Criminal Procedure 25. Subsection (a)[10] was added to provide:
 
 
 96
 If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.
 
 
 97
 There are neither logical nor pragmatic reasons for allowing a criminal jury trial, involving the liberty and reputation of a person, to go forward after the death of the trial judge while a civil jury trial, involving lesser stakes, must inevitably grind to a halt though neither party would be prejudiced by substitution.
 
 
 98
 We cannot accept the suggestion that the lack of a civil rule similar to criminal rule 25(a) establishes that a judge in a civil jury case lacks the authority to proceed that he has in a criminal case. Such an argument, though superficially appealing, overlooks the broad discretion that a judge has always exercised over mistrials in civil cases. The argument also ignores the different circumstances prompting the revision of rule 25 without a corresponding revision of rule 63. The revisers of rule 25 were confronted by an increasing number of protracted criminal cases[11] and a decision, Freeman v. United States, 227 F. 732 (2d Cir. 1915), holding that a criminal defendant was constitutionally entitled to the declaration of a mistrial upon the death of the presiding judge.[12] In contrast, no federal case has been cited that requires a mistrial in civil jury trials when a judge dies before return of a verdict. It is therefore understandable that rule 63 was not amended along with rule 25.
 
 
 99
 In sum, we recognize that a district court has broad discretion to grant or deny mistrials in civil cases. This general rule applies to diverse circumstances.[13] No statute, rule, or controlling case law expressly prohibits the court from exercising the discretion to deny a mistrial when a judge presiding over a civil jury trial dies before the return of a verdict. We decline to engraft on the civil rules an implied prohibition of this nature, because such an implication lacks an authoritative basis, and it would be contrary to the discretionary authority which rule 83 grants to district courts.
 
 III
 
 100
 Deciding whether Judge Murray properly exercised his discretion by proceeding with the trial need not long detain us. The case was initially assigned to Judge C. Stanley Blair, who ruled on a number of pre-trial motions, empanelled the jury, and presided over the first three weeks of trial. After his death, Ford moved for a mistrial. Judge Murray, to whom the case had been reassigned, denied the motion, setting forth his reasons in a carefully considered opinion. Working diligently, Judge Murray was able to review, before the case was submitted to the jury, the entire pre-trial record and the transcript of the prior proceedings.
 
 
 101
 Ford has not shown that it was prejudiced by the substitution of Judge Murray for Judge Blair. The record discloses that Judge Murray conducted the trial with full knowledge of the proceedings and without prejudice to either party. He properly utilized the services of the jury, conserved expenses to the parties and the government, and promoted the efficient administration of a busy court. He did not abuse his discretion by refusing to declare a mistrial.
 
 IV
 
 102
 Having determined that no statute, rule, or decision barred Judge Murray's resumption of the trial, we turn to Ford's claim that refusal to declare a mistrial infringed its seventh amendment rights. Ford bases its constitutional argument on the well recognized principle that the right of trial by jury secured by the seventh amendment means trial by a jury under the superintendence of a judge. Relying primarily on criminal cases that antedate the 1966 amendment to Rule 25,[14] Ford contends that proceeding after the death of a trial judge by substituting another judge "contravenes the seventh amendment."
 
 
 103
 We accept, of course, the proposition that trial by jury means a jury under the superintendence of a judge. See Capital Traction Co. v. Hof, 174 U.S. 1, 13-14, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899). But we cannot accept Ford's argument that the seventh amendment requires a mistrial when the judge dies before the jury returns a verdict. The pertinent provision of the seventh amendment is: "In suits at common law ... the right of trial by jury shall be preserved ...." In Colgrove v. Battin, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), the Court held that this provision of the amendment did not require a jury of 12 persons. In reaching this conclusion the Court said, 413 U.S. at 156-57, 93 S.Ct. at 2451-52:
 
 
 104
 Consistently with the historical objective of the Seventh Amendment, our decisions have defined the jury right preserved in cases covered by the Amendment, as "the substance of the common-law right of trial by jury, as distinguished from mere matters of form or procedure ...." The Amendment, therefore, does not "bind the federal courts to the exact procedural incidents or details of jury trial according to the common law in 1791," and "(n)ew devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice...." (citations omitted)
 
 
 105
 Applying these principles, we conclude that the seventh amendment does not require that the proceedings must be conducted by the same judge. Resumption of a trial after the death of a judge does not trespass on "the substance of the common-law right of trial by jury." It raises a procedural question whose resolution may vary from case to case. Tested by these principles, substitution is not forbidden by the seventh amendment.
 
 
 106
 Because the district court's order denying a mistrial should be affirmed, we dissent.
 
 
 
 [1]
 Twenty-seven floors contained condominium units. An upper deck conceived of as a community room perched on top of everything, but apparently did not contain any marketable units. Description as a twenty-seven or twenty-eight floor building would be appropriate. We shall consider the building as comprised, for the purposes which concern us, of twenty-seven floors
 
 
 [2]
 The date actually specified in the documents was September 1, 1975, which in that year coincided with Labor Day
 
 
 [3]
 Subsequently, Judge Herbert F. Murray, as a substitute for Judge Blair, took two weeks more of testimony before the jury retired and returned a verdict in favor of Towson
 
 
 [4]
 Professor Charles Wright (who served as an assistant to the Reporter for the Advisory Committee on the Civil Rules) has expressed the belief that constitutional obstacles stand in the way of application of Rule 25(a) over the objection of the defendant. 2 Wright & Miller, Federal Practice and Procedure: Criminal § 392. We have no occasion here to investigate that possibly thorny question
 
 
 [5]
 In an effort to escape the consequences of that telling argument, the dissent proposes that Rule 63 is as inapplicable to judge trials as it is to jury trials where the death of the judge has occurred before the return of verdict or the filing of findings of fact and conclusions of law. For both it contends that the rule is silent, and, therefore, not involved. The disregard of precedent in that approach is substantial. The courts have uniformly accepted the applicability of Rule 63 to the cases where death of the judge came before filing of findings and conclusions. E.g., Arrow-Hart, Inc. v. Philip Carey Co., 552 F.2d 711 (6th Cir. 1977) ("... we hold that a new trial is required and that Judge Siler was correct in his construction of Rule 63."); Ten-O-Win Amusement Co. v. Casino Theatre, 2 F.R.D. 242 (N.D.Calif.1942) ("The language of the rule (Rule 63) seems clear.... As findings of fact and conclusions of law herein were not 'filed' by Judge LOUDERBACK before his death, I have no power to sign and file them now. A new trial will be therefore granted as to defendant Donohue.")
 The dissent, accordingly, suggests a rationale for such cases not only distinct from, but in direct conflict with, the reasoning actually employed by them.
 
 
 [6]
 The dissent suggests that state court authorities are inappropriate precedent "for the Federal Rules of Civil Procedure were adopted to end conformity with state procedures." The suggestion overlooks, however, that, after the Federal Rules of Civil Procedure were adopted, the states themselves moved to bring themselves into conformity with federal procedures. Thus the state decisions cited, State ex rel. Lunsford v. Weber, 153 W.Va. 544, 170 S.E.2d 671 (1969) and Girard Trust Bank v. Easton, 12 N.C.App. 153, 182 S.E.2d 645 (1971), cert. denied, 279 N.C. 393, 183 S.E.2d 245 (1971) were decided under state rules of civil procedure which had adopted in haec verba the Rule 63 language of the Federal Rules of Civil Procedure. See 1 West Virginia Code Appx. Rule 63; 1A General Statutes of North Carolina (1969 Replacement Volume) § 1A-1, Rule 63
 
 
 [7]
 The dissent seeks to denigrate the observation of Scrutton, J. in Coleshill v. Manchester Corp. on the basis that, despite a doubt expressed on jurisdictional grounds, the Court in Coleshill nevertheless reviewed the appeal on the merits. The dissent fails, however, to allude to the most pertinent consideration that the trial below had continued before a substituted judge "at the urgent request of the parties." Hence, no point was preserved, or presented, on appeal. It would have required something bordering on effrontery for the judge to have frustrated the earnest desire of both parties to obtain a result. However, had, as here, one of the parties objected to continuation before a substituted judge and demanded a trial de novo, there is no doubt that Scrutton, J., regarding the result as dictated by English law, would have accommodated him
 St. Louis Southwestern Ry. v. Henwood, 157 F.2d 337 (8th Cir. 1946), cert. denied, 330 U.S. 836, 67 S.Ct. 965, 91 L.Ed. 1282 (1947), rehearing denied, 331 U.S. 870 (1947) has no pertinence. It was not a jury case, and, indeed, as a bankruptcy case, did not even arise under F.R.Civ.P. 63. In re Schoenfield, 608 F.2d 930, 933 (2d Cir. 1979); F.R.Civ.P. 81(a)(1). Indeed, St. Louis Southwestern Ry. v. Henwood, supra, seems to say that, had the statutory predecessor to Rule 63 been applicable, the discretion to substitute a judge would have been foreclosed. Id. 157 F.2d at 342.
 Where, as here, Rule 63 does apply: "The death ... of a judge during a trial and before a verdict is returned in a jury case or before findings of fact and conclusions of law are made in a court case will, in the absence of consent of all parties, normally result in a mistrial." 6A Moore's Federal Practice (2d ed.) P 59.08(2).
 
 
 [8]
 The materials are fully accessible as a consequence of deposits by members of the Advisory Committee on the Civil Rules with several law schools with which they had affiliations: Charles E. Clark (Yale University), Edmund M. Morgan (Harvard University), Edgar B. Tolman (University of Chicago), and Monte M. Lemann, (Tulane University)
 The dissent argues that reliance on such materials is inappropriate. However, it should be appreciated that, at the panel level, the dissent demonstrated, at least to the author's satisfaction, why Rule 63 mandated a new trial. It did so without any reliance on such materials. The materials are primarily relevant in that they serve to remove completely any lingering doubt that, however logical and persuasive, the result might just possibly be contrary to what the Rules Committee actually intended.
 As the dissent acknowledges, proceedings of the Rules Committee are "of great interest to scholars of the federal judicial system." In their almost daily resort to the authorities, federal judges are "scholars of the federal judicial system," as interested in making their decisions as accurate as possible as any professor of law.
 
 
 [9]
 His distinguished career embraced, in addition, the deanship of the Yale Law School, and service as a judge of the United States Court of Appeals for the Second Circuit
 
 
 [10]
 A member of the Fourth Circuit Court of Appeals
 
 
 [11]
 The suggestion that it was "inconceivable" that there should be a rule permitting judge substitution before verdict in criminal proceedings without a similar provision in the Civil Rules overlooks the special impact in the criminal area of double jeopardy considerations. For a criminal defendant, the amendment in 1966 to permit pre-verdict substitution of a judge allowed a case to go forward, at least when the criminal defendant preferred that it do so, rather than inevitably having to begin entirely anew. Contrast State v. Slorah, 118 Me. 203, 209, 106 A. 768, 771 (1919). In a civil case, having to start over would not engage the Fifth Amendment
 
 
 [12]
 Even if it be merely by implication, it is nevertheless the meaning of the Rule. Something exists although implied. Its non-existence is in no way established because, as a matter of proving, or of establishing, it, it was implied. Especially is such the case where, as here, the implication is irresistible
 
 
 [13]
 It would also constitute a "basic procedural innovation" which is not permitted under Rule 83. Miner v. Atlass, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960)
 
 
 [14]
 It not being relevant, we do not discuss (far less determine) the issue of whether Ford Credit was prejudiced by being compelled to proceed before a substituted judge following Judge Blair's death. However, the dissent has concluded that there was no demonstrated prejudice. We observe simply that prejudice may exist at several levels. One may concern solely the circumstances of the particular case; there is another general institutional level of prejudice. One may wonder, if one judge presumably may substitute for another in the midst of a jury trial without prejudice to an objecting party, why the practice never is employed to ease the operational problems confronting the courts. When a case drags on longer than anticipated, threatening to intrude on long-laid plans of the presiding judge to attend a scheduled judicial conference, why do we not simply substitute another judge, so long as it can be done without "prejudice?"
 The lawyers will tell us that in almost every such case the objecting party will perceive substantial prejudice. We should readily perceive it too.
 
 
 [1]
 State cases provide inappropriate precedent, for the Federal Rules of Civil Procedure were adopted to end conformity with state procedures. See 12 Wright & Miller, Federal Practice and Procedure § 3155. Similarly, Coleshill v. Manchester Corp., (1928) 1 K.B. 776, 786 (C.A.), cited to support Ford's position, furnishes uncertain precedent. In Coleshill, pursuant to a request by the parties, a substitute judge resumed a jury trial following the death of his predecessor. Notwithstanding the parties' consent, Justice Scrutton expressed doubt about the substitute judge's jurisdiction. The Court of Appeals, nevertheless, reviewed the case on its merits, and the opinions of the other two justices did not question the trial court's jurisdiction
 
 
 [2]
 Act of June 1, 1872, ch. 255, § 4, 17 Stat. 197
 
 
 [3]
 Act of June 5, 1900, ch. 717, § 1, 31 Stat. 270 (codified at 28 U.S.C. former § 776)
 
 
 [4]
 "This rule (63) adapts and extends the provisions of U.S.C.A., Title 28, former § 776 (Bill of exceptions; authentication; signing of by judge) to include all duties to be performed by the judge after verdict or judgment. The statute is therefore superseded." Notes of Advisory Committee on Rules
 
 
 [5]
 As we have previously noted, a reasonable interpretation of rule 63 gleaned from its plain language and the legislative history prior to its adoption shows that the rule was intended to address only the authority of a judge after verdict or filing of findings of fact and conclusions of law
 
 
 [6]
 Letter from the Chief Justice to Judge Francis D. Murnaghan, Jr. (Dec. 18, 1981)
 
 
 [7]
 We have no way of knowing how the discussion would have gone if the committee had been asked to address the issue raised by this case. Perhaps they, too, would perceive that rule 63 does not deal with the subject. Rather than expand the rule by implication, they might have come to the conclusion, as we have in Part II, that rule 83 "fills the gap" and commits the question of substitution when a jury is the fact finder to the sound discretion of the trial judge. But this supposition, just as reliance on the committee's discussion of nonjury cases to conjecture what they would have said about jury cases, lies in the realm of speculation
 
 
 [8]
 12 Wright & Miller, Federal Practice and Procedure § 3155 (1973), (quoting Edgar Tolman, Proceedings, Washington Institute on the Federal Rules, 129 (1938))
 
 
 [9]
 Rule 48 provides in part: "The parties may stipulate that the jury shall consist of any number less than twelve ...." In Colgrove the parties refused to stipulate
 
 
 [10]
 Subsection (b) is similar to Fed.R.Civ.P. 63
 
 
 [11]
 See Notes of Advisory Committee on Rules, 1966 amendment to rule 25
 
 
 [12]
 Notwithstanding Freeman, the amendment to rule 25 suggests that substitution of a judge is not prohibited by the Constitution. We agree and set forth our reasons in part IV
 
 
 [13]
 See, e.g., Standard Industries, Inc. v. Mobil Oil Corp., 475 F.2d 220, 228-29 (10th Cir. 1973); Burger Chef Systems, Inc. v. Govro, 407 F.2d 921, 933 (8th Cir. 1969); Traders and General Insurance Co. v. Mallitz, 315 F.2d 171, 173-74 (5th Cir. 1963)
 
 
 [14]
 See, e.g., Simons v. United States, 119 F.2d 539 (9th Cir. 1941); Freeman v. United States, 227 F. 732 (2d Cir. 1915)