THE TEXSTAR CORPORATION & AFFILIATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Texstar Corp. & Affiliates v. Commissioner
Docket No. 1485-72.
United States Tax Court
T.C. Memo 1984-350; 1984 Tax Ct. Memo LEXIS 319; 48 T.C.M. (CCH) 480; T.C.M. (RIA) 84350; July 11, 1984. J. Michael Wilkes, for the petitioner. Richard D. Ames, for the respondent. KORNER
MEMORANDUM OPINION "KORNER, Judge: Respondent determined a deficiency of income tax against petitioner for its fiscal year ending September 30, 1969, in the amount of $476,756.89. Among various issues raised by petitioner in its petition herein was the correctness of respondent in disallowing amounts claimed by petitioner as deductions in 1969 on account of amortizable bond discount for that *320 year as well as for three prior fiscal periods (forming part of a claimed net operating loss carryforward to the year 1969). In addition to denying petitioner's original allegations of error in this regard, respondent by amended answer affirmatively raised the defense of collateral estoppel, and alleged that petitioner was foreclosed, as the result of prior litigation, from claiming any deduction on account of amortizable bond discount. Petitioner filed a reply denying the affirmative allegations of respondent with respect to the issue of collateral estoppel, and respondent thereafter filed a motion for partial summary judgment herein on this issue. The case came before the Court in this posture, and was argued by both parties. From the pleadings, respondent's motion and petitioner's response thereto, together with attached and associated papers filed therewith and the admissions of the parties at the time of argument of the motion, the Court finds that the following relevant and material facts are established by the record: Petitioner corporation, whose principal office is located in Grand Prairie, Texas, filed a consolidated Federal income tax return for its fiscal year ended *321 September 30, 1969, with the District Director of Internal Revenue at Dallas, Texas. In said return, petitioner claimed an expense deduction in the amount of $34,468.77 as amortization of original bond issue discount. It further claimed a net operating loss deduction carryforward from prior years in the amount of $196,490.44, composed in part of similar bond discount amortization deductions of $55,532.25 for the taxable period ending March 31, 1967, $14,535.60 for the taxable period ending September 30, 1967, and $35,264.03 for the taxable period ended September 30, 1968. In his audit of petitioner's return, respondent disallowed all said claimed deductions. I.C.T. Discount Corporation was incorporated in 1952. At that time, I.C.T. issued both common and preferred stock. I.C.T. changed its name to Unitex Industries in 1956. During Unitex's early history, it incurred substantial losses. New management decided to eliminate the preferred stock and recapitalize the Unitex common stock, so as to eliminate a large deficit in earnings and profits. In pursuance of this objective, Unitex management proposed, and the necessary majority of the preferred stockholders ultimately adopted, *322 a plan whereby the preferred shareholders were to surrender their preferred stock in exchange for $2 in cash and a $10 interest-bearing debenture for each share of preferred. The exchange, once approved by the shareholders, took place on December 31, 1959. The present petitioner purchased the assets and assumed the liabilities of Unitex on November 15, 1966. Unitex's returns for the years 1963, 1964, 1965 and the short year January 1, 1966, through November 15, 1966, claimed amortization of original issue discount arising out of the above exchange. Upon audit, respondent determined that Unitex was not entitled to the claimed original issue discount, and the deductions were accordingly disallowed. Petitioner, as transferee of the assets of Unitex, paid the resulting deficiency assessment for those years, filed claims for refund which were denied, and subsequently filed suit for refund in the United States District Court for the Northern District of Texas in 1971. In the District Court case, The Texstar Corporation, Transferee of the assets of Unitex Industries, Inc. and its subsidiaries, v. United States of America (hereinafter referred to as "Texstar I"), petitioner *323 was the plaintiff and had the burden of establishing the amount, if any, of original issue discount, allowable under section 163(a), [1] which Unitex had suffered in the issuance of its debentures, plus cash, for its old preferred stock. [2] The case was tried in 1972, and at that time, apparently believing that no independent evidence of fair market value of the new debentures was available (because the new debentures had never been traded), petitioner undertook to establish their fair market value solely by reference to the fair market value of the outstanding preferred stock for which the debentures (plus cash) were exchanged. Petitioner undertook to establish the fair market value of the preferred stock through the testimony of an expert witness. After the trial, and pursuant to motions, decision of the case was delayed awaiting the Supreme Court decision in Commissioner v. National Alfalfa *324 Dehydrating and Milling Co. (hereinafter "National Alfalfa"), which was decided in 1974, 417 U.S. 134 (1974). In that case, in a recapitalization exchange of debentures for preferred stock entirely comparable to the instant case, the Supreme Court held that no debt discount deduction was allowable, since the fair market value of neither the debentures nor the stock involved had been established. In so holding, the Supreme Court laid down the requirement that such values be established "subject to the exigencies of the competitive money market," 417 U.S. at 151, either by free market quotations or other acceptable evidence. Thereafter, in 1978, the Court of Appeals for the Fifth Circuit decided the case of Gulf, Mobile & Ohio Railroad Co. v. United States (hereinafter "GM&O"), 579 F.2d 892 (5th Cir. 1978), in which the Court, distinguishing National Alfalfa, found that the reorganization exchange was entirely voluntary, that there was adequate evidence of fair market values of both the outstanding preferred and the debentures, and that the amount of an allowable debt discount deduction was determinable. Both parties in *325 Texstar I thereafter filed separate motions for a new trial. Before such motions were decided, however, the District Court judge who had tried Texstar I died, in 1979. The case was thereafter reassigned to a new judge who, in consideration of Rule 63 of the Federal Rules of Civil Procedure, [3] contacted the parties to discuss whether a new trial of the case would be necessary. As the result of a conference in Chambers, both parties consented to have the case decided on the basis of the existing record, and apparently withdrew their respective motions for a new trial. *326 The new judge thereafter decided Texstar I in petitioner's favor, purporting to rely on the standards of proof promulgated by the Supreme Court in National Alfalfa, and his reading of the Fifth Circuit's interpretation of those standards in GM&0.Texstar I,528 F. Supp. 75 (N.D. Tex. 1981). He specifically found that "Market forces acted on the exchange of stock for debentures" (528 F. Supp. at 79). He accordingly found a fair market value for the preferred stock and, after adjusting for the cash boot paid by Unitex, found a debt discount measured by the difference between the resulting value, which he found to be the "issue price" of the debentures, and the redemption value of said debentures. Upon appeal, however, the Court of Appeals for the Fifth Circuit reversed, 688 F.2d 362 (5th Cir. 1982), and certiorari was denied by the Supreme Court, 460 U.S. 1052. The Court of Appeals, finding that the District Court had misapplied the standards of National Alfalfa and GM&0, held that petitioner had failed to prove the fair market value of the Unitex preferred stock and that, there being no other evidence in *327 the record of the issue price (i.e. fair market price) of the debentures, except by reference to such unproved value of the preferred, the amount of deductible debt discount could not be established. The Court of Appeals said (688 F.2d at 367): Here, the shares were redeemed enbloc pursuant to a plan approved by the shareholders, as in the insulated transaction in National Alfalfa. Nor was the exchange entirely free, being required by charter amendment opposed by a material minority of the preferred shares [footnote omitted]. The estimate of the value of the preferred sought to be substituted for the fair market value of the debentures in this case was reconstructed many years after the transaction occurred. We are unable to perceive in this artificial scenario the play of market forces acting through informed agents to reveal a measurable additional cost of borrowing money [footnote omitted]. In essence, then, the Fifth Circuit in Texstar I held that: (1) A determination of the fair market value of the debentures was essential; (2) the fair market value of the debentures, absent direct evidence of value in the free market, could be established *328 by reference to the fair market value of the preferred stock for which they were exchanged, but only where such preferred fair market value is established through evidence of the free "play of market forces acting through informed agents;" and (3) petitioner had failed to meet the necessary standard of proof to establish the fair market value of the preferred (and thus of the debentures) under the tests of National Alfalfa.
The Court finds that there are no relevant and material facts in dispute and that the present issue may be decided as a matter of law. Rule 121(b). In support of his motion for partial summary judgment based upon the application of the doctrine of collateral estoppel, respondent's position before us is simply that Texstar I, at least in the Fifth Circuit, was decided under the new standards of National Alfalfa, presently and then in effect, that all the tests for the application of collateral estoppel in the instant case are met, that petitioner had a full opportunity in the trial of Texstar I to present any desired evidence, and that this is a classic case for the application of the doctrine of collateral estoppel, so as to foreclose relitigation *329 of the issue of original issue discount for a different year in this case. Petitioner's position is that: (1) Between the time Texstar I was tried in the District Court in 1972 and the time it was decided in 1981, a significant change in the law occurred as it applies to this case, through the decisions of the Supreme Court in National Alfalfa and the Fifth Circuit in GM&0.
(2) Petitioner tried the case of Texstar I on the basis of the prior law, believing that it could establish the value of the debentures by establishing the value of the preferred stock in exchange for which the debentures were issued, by expert evidence. It therefore presented no independent evidence as to the fair market value of the debentures. In reversing the judgment in its favor rendered by the District Court, the Fifth Circuit applied new and different standards of proof based on National Alfalfa and GM&0 and held that petitioner had failed to prove the fair market value of the preferred, thus eliminating the "equivalence" theory of proof. The Fifth Circuit, however, did not remand the case to the District Court to give petitioner the opportunity to present independent evidence *330 of the fair market value of the debentures. Thus, petitioner claims it did not have a "full and fair opportunity" to present such evidence in the prior case, within the meaning of Kremer v. Chemical Construction Corp.,456 U.S. 461 (1982), and Allen v. McCurry,449 U.S. 90 (1980). As a result, petitioner urges that application of the doctrine of collateral estoppel in this case would be basically unfair. The principles of the doctrine of collateral estoppel, at least so far as they pertain here, may be stated as follows: a) There must have been prior litigation between the same parties, or those in privity with them. b) The issue to be decided in the later case must be the same as an issue presented in the darlier case which was decided on the merits. c) The party to be estopped must have had a full and fair opportunity to be heard on the issue in the prior case. d) Between the first and second litigation, there must not have been any material change in the law as it applies to the disputed issue. Commissioner v. Sunnen,333 U.S. 591 (1948); Montana v. United States,440 U.S. 147 (1979); Oldham v. Pritchett,599 F.2d 274 (8th Cir. 1979); *331 Lea, Inc. v. Commissioner,69 T.C. 762 (1978). As to the first point, there can be no controversy. Petitioner here is the same as the plaintiff in Texstar I, and respondent is a party in privity with the United States. Nor can there be any dispute as to the second point. The issue decided adversely to petitioner by the Fifth Circuit in Texstar I was the same issue which is presented in the instant case -- the amount and allowability of a deduction for the amortization of original issue debt discount upon the issuance of the Unitex debentures in exchange for its preferred stock in 1959. The fact that the Fifth Circuit decided Texstar I based upon petitioner's failure of proof rather than on a specific finding of fact is nevertheless a decision on the merits. Fairmont Aluminum Co. v. Commissioner,22 T.C. 1377 (1954), affd. 222 F.2d 622 (4th Cir. 1955), cert. denied 350 U.S. 838. As the Court of Appeals said in that case (222 F.2d at 625): When taxpayer has invoked the judgment of the court with respect to his claim, he is bound by an adverse judgment, whether this has resulted from the fact *332 that the law is against him, from failure to produce sufficient proof or from failure to include sufficient facts in a stipulation. As to the third and fourth points, we have some doubt whether National Alfalfa established a new rule of law or did anything more than clarify the quantum of proof that would be required to establish the existence of debt discount under section 163. Cf. Fairmont Aluminum Co. v. Commissioner,supra;Lea, Inc. v. Commissioner,supra. However, we bear in mind here that respondent has the burden of proof not only to establish the necessary elements of collateral estoppel against petitioner, Rules 39, 142(a), but also that, in deciding a motion for summary judgment, we * * * must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought * * * with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. [Heyman v. Commerce and Industry Insurance Co.,524 F.2d 1317 1320 (2d Cir. 1975)]
Accepting arguendo, then, that National Alfalfa and GM&O created at least a new *333 legal climate, which was the basis upon which the Fifth Circuit decided Texstar I, which was different from that which prevailed in 1972 and which might permit petitioner now to relitigate the debt discount issue, [4] we are faced with the question whether petitioner in fact had such an opportunity in Texstar I, but waived it. In Texstar I, the District Court judge who tried the case died before rendering his findings of fact and conclusions of law. Under these circumstances, Rule 63 of the Federal Rules of Civil Procedurerequires that a trial de novo be granted, unless the parties stipulate otherwise. Whalen v. Ford Motor Credit Co.,684 F.2d 272 (4th Cir. 1982), cert. denied 103 S. Ct. 216. What happened in Texstar I is clearly revealed by a colloquy between the Court and petitioner's counsel at the time of the argument *334 of the instant motion: THE COURT: Let me ask a question right there. The case was tried, as I understand it, to a District Court judge who died before giving a decision. MR. WILKES: That is correct. THE COURT: The case was then assigned to a new District Court judge. MR. WILKES: That is correct. THE COURT: Am I correct? The new judge to whom the case had been assigned, still not having been decided, contacted the parties and asked if they would consent for him to take it over and decide it on the existing record, and the parties consented. MR. WILKES: That is correct. THE COURT: So that there was an opportunity there, presumably, if either side had objected, to go back and retry the case because a new judge had been decided [sic] under Rule 63 of the Federal Rules. Is that right? MR. WILKES: That is correct. THE COURT: So that what happened here, as I understand it, is that the taxpayer, when the new judge asked, the parties, the taxpayer and the government, consented to have the new judge decide upon the basis of the existing record. Is that right? MR. WILKES: That is correct. THE COURT: And so that is -- he then wrote it up and decided it. Now, all that *335 took place, that reassignment to a new judge took place, if I am correct, after National Alfalfa. MR. WILKES: That is correct. * * * THE COURT: The point I want to make clear, though, is that there was no suggestion by the new District Court judge that if either party had asked for the case to be retried, that he would have refused to do it. MR. WILKES: In fact, one of the parties had filed a motion for new trial, and -- THE COURT: And then it was withdrawn. MR. WILKES: Well, the Government at this hearing said -- and I think, Your Honor, I can quote -- We are going to have to have a new trial here, and when the judge made his feelings known about judicial economy, so, I guess, perhaps technically the parties could have stood on their rights and forced a new trial, it was apparent that that probably was not in the best interests of everyone involved, and both parties did consent. THE COURT: Okay. MR. WILKES: * * * What we are arguing is that there never has been an opportunity to present the direct testimony or expert testimony on the value of the bonds at the time they were issued. The Government -- THE COURT: Well, now, you say that, but what you really mean *336 is, at the time the case was tried in the [sic] District Court, the taxpayer didn't think that was necessary. MR. WILKES: I think that is correct, and that is where I think National Alfalfa came in and change the nature of the -- changed the law, in that National Alfalfa came along and said, You can't assume an equivalence of the value of the stock and the bonds in an intercorporate [sic] transaction. * * * It is thus uncontroverted in this record that petitioner had an absolute right to a trial de novo in 1979, after the District Court judge who had tried Texstar I had died, five years after the Supreme Court decision in National Alfalfa and the year after the Fifth Circuit decision in GM&O. At such retrial, petitioner would have been free to present any evidence which it desired to establish the existence of an original issue discount under the standards of proof mandated by those two cases. [5] Instead, petitioner chose not to do so and agreed with respondent that the case could be decided by the new District Court judge on the basis of the existing record. Petitioner had his "full and fair opportunity." *337 Under these circumstances, we must hold that petitioner is bound by that election here, that all the necessary elements of collateral estoppel are present, and that respondent's motion for partial summary judgment herein must therefore be granted. An appropriate order will be entered.
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 as amended, and all Rule references are to the Rules of Practice and Procedure of the Tax Court, except as otherwise noted. ↩
2. Neither present sections 162(e) nor 1232(b) were in effect in the relevant periods.↩
3. Rule 63 of the Federal Rules of Civil Procedure provides as follows: If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the Court under these Rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the Court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.↩
4. At this point, the "change of legal climate" point in this case merges with the "full and fair opportunity" point: if the rules of the game changed significantly after the first contest, petitioner should have an opportunity to replay the match under the new rules.↩
5. Which is not to say that petitioner was prevented in any way from presenting such evidence at the 1972 trial of Texstar I,↩ if it had chosen to do so.